NATHANIEL WILSON *vs.* FRANK S. PRESCOTT and another.

*Landlord and tenant—how relation is terminated.*

A lease at will may be determined by either party by a thirty days' notice in writing, terminating on a pay-day of rent; but a landlord may terminate the same by a notice irrespective of pay-day, provided that when the notice expires any rent due before that time then remains unpaid.

Where a tenant who terminates a lease at will by the statutory notice leaves rubbish upon the premises, he will be liable for any damages occasioned thereby; but such act will not necessarily amount to a waiver of the notice, or to a continued use and occupation of the estate.

ON REPORT.

ASSUMPSIT upon an account annexed. The only subject in dispute was the amount due the plaintiff from the defendants for rent ; upon which issue the presiding justice found and reported the following facts. The defendants, one of whom was a son of the plaintiff, desiring to go into business, the plaintiff, in order to assist them in doing so, took from Adams H. Merrill a lease under seal, dated April 1, 1869, running five years at a rental of $500 payable quarterly, of a wharf in Bangor, and bought a store upon this wharf which he fitted up for the occupancy of the defendants, who took the premises with an oral agreement or understanding that they would occupy them during the term aforesaid and would assume all the responsibilities of the plaintiff under the lease, precisely the same as if it was running to them, the lessor endorsing thereon his consent to this underletting, "but not releasing said

Nathaniel Wilson from any of the agreements, conditions and stip-ulations set forth in said lease," which was delivered into the pos-session of the defendants, they paying Merrill the rent quarterly as it fell due, and it was endorsed on the lease as paid up to Jan. 1, 1872. The rent of the store was $150 *per annum*, making a total of $650, for that and the wharf. The store rent was paid in a lump sum which carried it from April 1, 1869, to Oct. 1, 1871, at the rate specified. Nov. 22, 1871, the defendants dis-solved partnership, young Wilson retired, "and the subsequent proceedings interested him no more,"—Prescott giving him an in-demnity against all the firm indebtedness, and now making this defence.

Upon the first day of December, 1871, the defendants caused to be served on the plaintiff a notice in due form, terminating the tenancy on the first day of January, 1872, on which day the key of the store was tendered to and refused by him, and it was left upon his premises without his consent. One quarter's rent of the store ($37.50) fell due that day, which it is admitted the plaintiff must recover, together with other items of his account annexed ($19), making due in all $56.50 and interest, unless the defendants were entitled to offset against it certain store-bills partly due to their firm, partly to Prescott alone, and partly to him and another part-ner who came in after Mr. Wilson, Jr. retired. There was no set-off filed and no special agreement so to apply these bills; but, during their occupancy of the store, it had been customary to de-duct the plaintiff's store bills from the rent and pay only the bal-ance. The plaintiff did not assent to the termination of the tenancy under the notice aforesaid, but protested against it. He received no rent after Jan. 1, 1872, except $53.18 wharfage, but had to pay rent to Merrill till Oct. 17, 1872.

The plaintiff claims that the defendants did not vacate the wharf Jan. 1, 1872, because they then left some ashes thereon, the facts about which were these; one Perkins had been in the habit of landing cargoes of ashes on the wharf with the consent of the defendants, paying wharfage, and in November or December 1871,

Wilson *v.* Prescott.

without any notice to defendants and without their knowledge, though under such consent as was supposed or implied between them from instances of the same kind before, landed a cargo of ashes which soon became frozen, and it was not practicable to remove them by Jan. 1, 1872, and they were not finally cleared away till June, 1872, but they were not the cause of preventing the property from renting in the meantime.

Upon the foregoing facts and findings the full court were to enter such judgment as might be proper.

*N. Wilson, pro se.*

*A. W. Paine,* for the defendants.

PETERS, J. The plaintiff claims to hold the defendants to the terms of a lease not signed by them. They expected to execute it, but neglected to do so. If a verbal lease is not binding beyond a tenancy at will, *a fortiori* a verbal agreement to make a lease would not be. The plaintiff adds nothing to the strength of his position by insisting that thereby the defendants committed upon him an act of fraud. The act alone, and not the motive for it, furnishes the criterion whether there has been a compliance with the requirements of the statute. It does not appear that the defendants would not have signed the lease upon request, at any time before a dissatisfaction grew up about the occupancy of the premises.

The defendants gave due notice that they would quit the premises on Jan. 1, 1872, when the quarter's rent was payable. It is argued that they could not terminate the tenancy at will on that day, because they were then, and ever since have been, owing a small amount of rent for their occupancy before that time. This question involves a construction of the provision of the statute, that "all tenancies at will may be determined by either party by thirty days' notice * * excepting cases where * * * no rent is due at the time the notice expires." This clause is awkwardly worded, if not obscure. We are satisfied, that the con-

struction placed upon it by the counsel for the defendants, is the correct one. The expiration of the thirty days' notice to terminate the lease at will must be coincident in point of time with a pay-day of rent. Such notice given by either side will be valid. But there is an exception to this requirement, so far as a termination by the landlord is concerned. His notice to the tenant may be thirty days without respect to any pay-day, if when the notice expires, the tenant shall be in any arrears of paying his rent. That is, it matters not whether any rent becomes payable on such particular day or not, if any rent previously due then remains unpaid. The privilege of giving the limited notice is accorded only to the landlord. Of course the tenant cannot take advantage of his own wrong. The correctness of this construction is the more apparent from a reference to the act contained in R. S., of 1841, c. 95, § 19, from which the idea of the present statute is derived, which is this:—"all tenancies at will may be determined by either party, by three months notice in writing, for that purpose given to the other party; and, when the rent, due upon such lease, is payable at periods of less than three months, the time of such notice shall be sufficient, if it be equal to the interval between the days of payment; and, in all cases of neglect or refusal to pay the rent due on a lease at will, thirty days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease."

The plaintiff further contends that leaving the ashes on the wharf, in the manner described in the report of the case, was a waiver by the defendants of the notice to terminate the tenancy, and amounted to a continued use and occupation of the estate. We think otherwise. So far as the tenants, by any act of their own, left the premises in an untenantable condition, they would be liable for the extent of the injury in a special action adapted to the facts of the case.

The defendants admit $37.50 to be due for a balance of rent on Jan. 1, 1872, and claim that it is more than paid by certain store accounts to be allowed thereon. Upon the facts presented, how-

ever, this point is not made out. Therefore a default is to be entered for a sum equivalent to the sums of $19, and interest from the date of the writ, and $37.50 and interest from August 1, 1872.

*Judgment for $56.50 and interest.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.