1pw395
131   93

HUGH BURNS, JAMES ROBINSON and JOHN ROTHROCK, *against* the HUNTINGDON BANK, for the use of JOHN GEISSINGER.

A judgment was obtained against a principal who gave absolute bail to obtain a stay of execution; after which the absolute bail were sued and judgment obtained against them. *Held :* That one of two sureties in the original obligation who paid one half the debt, is entitled to an assignment of the judgments against the principal and the absolute bail, to enable him to indemnify himself for the amount thus paid.

The order of the court of Common Pleas making such assignment, is the subject of a writ of error.

WRIT of error to the court of Common Pleas of Mifflin county.

*Robert Burns* borrowed from the Huntingdon bank, one thousand dollars, for which sum he gave his note with *John Geissinger*, and *James Mackey*, as endorsers. The note not having been paid at maturity, the bank sued *Robert Burns*, and obtained a judgment against him, and sued *Geissinger* and *Mackey*, the endorsers, and obtained judgment against them. On the 24th January, 1818, *Hugh Burns*, *James Robinson* and *John Rothrock*, became the absolute bail in the judgment against *Robert Burns*, under the 7th section of the act of 21st March, 1806, to obtain for the defendant, a stay of execution for one year from the return day of the writ. The money not having been paid within the year, the bank sued the recognizance of *Hugh Burns, James Robinson* and *John Rothrock*, to August term, 1818, and obtained a judgment against them, upon which a *fieri facias* issued, and was levied upon real estate, which was extended.

*Geissinger*, having paid the one half of the judgment which had been obtained against him and *Mackey* as endorsers, on the 21st

(Hugh Burns, James Robinson and John Rothrock, *v.* The Huntingdon
Bank, for the use of John Geissinger.)

August, 1824, obtained from the court of Common Pleas, a rule
upon *Robert Burns*, the principal, and *Hugh Burns, James Robinson*
and *John Rothrock*, the absolute bail, to show cause "why the judg-
ment at the suit of the *Huntingdon Bank* v. *Robert Burns*, and any
recognizance in that suit, should not be marked for the use of the
said *John Geissenger*, for the purpose of enabling him to indemnify
himself for the money which he had paid in the suit of the same
bank against him and *Mackey*."

The right of the court to enforce this rule was denied on two
grounds.   First.   That both parties are bail of *Robert Burns*, and
neither has a superior equity.   And second.   That *Geissinger* is not,
at all events, entitled to the interposition of the equitable power of
the court, until he has paid the *whole* of the money.

Both these positions were overruled by the court, (*Burnside*,
president,) who made the rule absolute.

This order of the court was here assigned for error.

*Potter*, for defendant in error, moved to quash the writ, on the
ground, that there was no final judgment, but a mere exercise of
the discretion of the court.

*Blanchard*, for plaintiff in error.   The exercise of the power of
the court was in the nature of an action, by which one was made
liable to another for money; in all such cases a writ of error will
lie.   *The Commonwealth* v. *The Judges of the Common Pleas of
Philadelphia county*, 3 *Bin*. 273.

The claim of *Geissinger* to the right to have execution against
the absolute bail, is in the nature of a right of action against them,
and if it can be sustained, must have the essential qualities of a
right of action—privity of contract, and a consideration; neither of
these exist here.   Both *Geissinger* and *Hugh Burns* and others, the
absolute bail, are liable to the bank, each in consequence of his
independent legal obligation; as between themselves there is no
privity, and neither has a superior equity to the other : in such
cases a court of equity will not interfere.   *Viers and wife*, v. *Mont-
gomery*, 4 *Cranch*, 177.

Equality is not equity between sureties bound by different obli-
gations, *Peck* v. *Ellis*, 2 *Johns. Chan. Rep*. 137.   *Burrows* v.
*M'Whann*, 1 *Desaussure's Chan. Rep*. 409.   3 *Har. & M'Hen*. 254.
*Ranch* v. *Becker*, 12 *Serg. & Rawle*, 412.   *Bachelder* v. *Fisk*, 17
*Mass. Rep*. 464.

But at all events there can be no substitution until the whole
debt is paid: no one can take the place of the bank until it is first
satisfied.

*Potter*, for defendant in error.   The bank having obtained a
judgment against the principal in the note, who procured absolute
bail to be entered for a stay of execution, the recognizance then
entered into became a part of the judgment, and an additional

(Hugh Burns, James Robinson and John Rothrock *v.* The Huntingdon Bank, for the use of John Geissinger.)

security to the bank : and upon the well settled principles of equity in Pennsylvania, a security who pays money for the principal is entitled to all the securities which the plaintiff has for the debt. *Wolfersberger* v. *Bucher,* 10 *Serg. & Rawle,* 12. The same doctrine is contained in *Parsons* v. *Briddock,* 2 *Vernon,* 608. If the Huntingdon bank had had the bond of a third person as a collateral security, the endorsors would have been entitled to an assignment of it also. *Hays* v. *Ward,* 4 *Johns. Chan.* 127. The doctrine of substitution does not depend upon privity of contract, but upon principles of equity and justice. *Dorsheimer* v. *Bucher,* 7 *Serg. & Rawle,* 9. *Lenox* v. *M'Call,* 9 *Serg. & Rawle,* 309. *Classen* v. *Morris,* 10 *Johns. Rep.* 524. *Waddington* v. *Redinburg,* 2 *Johns. Cases,* 227. *King* v. *Baldwin,* 2 *Johns. Chan.* 554. 1 *Eq. Ca. Ab.* 93. 1 *Atkins,* 135. 2 *Peer Wms.* 543. *Hawk* v. *Geddis,* 16 *Serg. & Rawle,* 23.

The endorsers were prejudiced by the interference of the absolute bail who put a stop to the proceeding of the bank to obtain the money.

*Hale,* in reply. We are concerned as well for the bank, as for the absolute bail; and contend that in no case can the sureties claim an assignment of the judgment or other security against the principal until they have paid the whole debt. Here *Geissinger* has paid but one half of the debt, and under these circumstances no court has power to interfere with the securities of the bank until their debt is paid in full.

If this order of the Common Pleas is sustained *Geissinger* may take out a *lib. fas.* for the one half of the judgment and at some future day *Mackey* may pay the other half and take out a *lib. fas.* for his money : or before such payment the bank may take out a *lib. fas.* for the balance yet due to them, which would be exceedingly inconvenient and irregular, and which shows the propriety of the rule, that the *whole* debt must be paid.

The entry of absolute bail for the stay of execution was a *legal* consequence, and which the endorsors therefore knew, when they undertook the responsibility of endorsing for *Robert Burns.* They were not prejudiced by this : and if they were, it was the subject of proof, and which it was incumbent upon them to make.

But there is another ground of objection. Although the condition of the recognizance, entered into by the absolute bail was, that the defendant in the judgment should pay the money within *a year,* yet time was not of the essence of that contract, for a discharge of the original judgment at any time thereafter, would be a discharge *pro tanto* of the recognizance, whether that payment be made by the defendant himself or by any collateral security which the plaintiffs had for their money. The payment, therefore, by *Geissinger* of five hundred dollars, discharged the judgment against the princi-

(Hugh Burns, James Robinson and John Rothrock, *v.* The Huntingdon Bank, for the use of John Geissinger.)

pal to that amount; and of course discharged the recognizance of the absolute bail to the same amount.

The opinion of the court was delivered by

GIBSON, C. J.—It seems the bank is satisfied, and the question is between *Geissinger*, who actually paid the debt of *Burns*, and *Rothrock* and *Robinson*, who were bound by recognizance and judgment to pay it. As against *Burns*, in relation to whom *Geissinger* stood as a surety, the case would be clear; but it is said that as against *Rothrock* and *Robinson*, who also stand in the relation of sureties, and not in privity with *Geissinger*, there is not the same equity. Privity is perhaps essential to a claim for contribution, but it is certainly not indispensible to the right of subrogation; of which *Parsons* v. *Briddock*, 2 *Vern.* 608, is an emphatic instance. There, a judgment against bail in an action on the several bond of the principal, was decreed to be assigned to the sureties who had, in the meantime, been compelled by an action on the same bond, to pay the debt. Yet there was no privity; and although both parties stood in the relation of surety towards the principal, they nevertheless stood in unequal equity between themselves, because the bail had so identified himself with the principal as not to be distinguished from him. Nor ought they to be distinguished here, inasmuch as they interposed to procure a personal advantage to the principal, and to the detriment of the surety, who might perhaps, have been exonerated, had the proceedings not been staid against the principal; and in this respect the case is rather stronger than *Parsons* v. *Briddock*. The bank being satisfied, there is therefore no doubt that *Geissinger* is to be substituted for the amount paid by him. On the other hand, there is as little doubt that a writ of error lies on an order like the present, which is in the nature of an award of execution, and which would otherwise leave a party injured by it, without remedy.

Order of the Common Pleas affirmed.