(28 Misc. Rep. 628.)

### SMITH v. NATIONAL SURETY CO.

(Supreme Court, Special Term, Monroe County.  June, 1899.)

1. SUBROGATION OF SURETY.

A surety on appeal, who has been compelled to pay a judgment founded on tort, against several defendants, is entitled to be subrogated to plaintiff's rights under a contract with one of them, made pending the appeal, without the surety's knowledge or consent, binding said defendant to pay part of the judgment on condition of his release therefrom.

2. SAME.

Where a surety on appeal has been obliged to pay plaintiff's judgment, the latter cannot question the surety's right to be subrogated to plaintiff's right under the judgment or any security held against any defendant.

Action by Frank Smith against the National Surety Company. Plaintiff recovered judgment against defendant as surety on an appeal bond, and the defendant moved to compel plaintiff to assign a certain judgment and security held by plaintiff against the surety's principal.  Granted.

John Van Voorhis and John W. Stebbins, for plaintiff.
Nathaniel Foote, for defendant.

DAVY, J.  It appears from the affidavits read on this motion that the plaintiff on the 7th day of December, 1897, recovered a judgment in the supreme court against Theodore G. Smith, Stephen W. Adwin, and John Kalb for $1,125.13 damages and costs, for malicious prosecution; that all of the defendants in that action appealed to the ap-

pellate division of the supreme court, which appeal on the 26th day of April, 1898, was dismissed, with costs of the appeal against all of the defendants.   It also appears that Stephen W. Adwin was the only defendant who gave an undertaking on the appeal, which was executed by the defendant in this action as surety, who agreed to pay all costs and damages which might be awarded against Adwin on said appeal, not exceeding $500, and, in case the judgment on appeal was affirmed or said appeal dismissed, that he would pay the sum ·recovered or directed to be paid on the judgment, or the part thereof as to which it should be affirmed.    The appeal was dismissed, with costs against all of the defendants.    Adwin failing to pay the judgment, the plaintiff sued the defendant as surety on the undertak-'ing, and recovered a judgment on the 17th day of February, 1899, for $1,361.58 damages and costs.    It also appears that while the appeal was pending the plaintiff, Frank Smith, entered into an agreement in writing with John Kalb, one of the defendants in that action, that if he would discontinue his said appeal, and proceed no further thereon, or in the cause of action out of which the appeal had arisen, and would pay the sum of $400 to the plaintiff, he would release and· save him harmless from any further costs and expense in regard to said appeal, and that said Kalb should in no event be required to pay said Smith any sum in excess of $400.    This motion is made to compel the plaintiff, upon the payment of the judgment.herein, to assign to him the said contract and judgment.                         .

The learned counsel for the plaintiff contends that the court, upon this motion, has no power to compel the plaintiff to assign the said judgment or contract; that, the judgment being founded upon an action in tort, Adwin could not enforce contribution from his co-defendants; and that the surety's rights in that respect are no greater than Adwin's.    There can be no·question but what the plaintiff is entitled to have his judgment against the defendant as surety paid in full, before the surety can compel him to assign the judgment which he holds against the joint debtors, and it is also true that there can be no contribution between joint debtors in actions of tort.    The surety in this case, however, is not a joint wrongdoer.    It simply occupies the position of surety, who has obligated itself to pay the joint indebtedness of Adwin, Smith, and Kalb; and the question arises whether the surety, upon paying that indebtedness in full, is entitled to be subrogated to the rights of the creditor against all of the judgment debtors.    The defendant, as surety for Adwin, in paying his indebtedness to the plaintiff, pays the indebtedness of the other joint debtors.    It seems to me that, where a surety upon an undertaking given by one of the joint debtors for the payment of the debt is compelled to pay it in full, he is entitled, upon equitable principles, to be subrogated to all the rights of the creditor against all the joint debtors.    Robinson v. Sherman, 2 Grat. 178; Leake v. Ferguson, Id. 419.    It has ·been held that where one partner gives his individual note for the benefit of the firm, and the surety pays it, he may recover indemnity from all the members of the firm.    1 Brandt, Sur. § 216; Burns v. Parish, 3 B. Mon. 8; Hikes v. Crawford, 4 Bush, 19.    It is a well-settled rule that, where the relation of principal and surety

exists, the creditor must preserve unimpaired all his rights against the debtor, where he intends to look to the surety for payment. This obligation springs from the right of subrogation established by law in favor of the surety who pays the debt of his principal, and if the creditor fail to comply with this obligation, or destroys or impairs the right of subrogation to the judgment and securities, the surety will be released. It is a familiar principle of law that a surety who pays a debt for his principal is entitled to be put in the place of the creditor, and to avail himself of every means that the creditor had to enforce payment against the principal debtor. The doctrine of subrogation is frequently applied in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is only secondarily liable for the debt. It is also applicable to cases where the party is compelled to pay the debt of a third person to protect his own rights or to save his own property. Subrogation is not founded upon contract, but upon principles of equity, and may be enforced where no contract or privity of any kind exists between the parties. It has been repeatedly held that, whenever one not a mere volunteer pays and discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor. Bispham, in his excellent work on the Principles of Equity (section 336), says:

"This equity of subrogation is one eminently calculated to do exact justice between persons who are bound for the performance of a duty or obligation, and is one, therefore, which is much encouraged and protected. This may be seen from the rule which allows a surety to keep alive a judgment for the purpose of obtaining satisfaction out of the principal. Ordinarily the payment of a debt operates as an extinguishment, and a judgment obtained for a debt would necessarily fall with it. To apply the rule to the case of a surety paying the debt would obviously work injustice in many instances; for, coming in as a simple-contract creditor, the surety might lose his chance of reimbursement. It has accordingly been held, and must be considered to be a generally received doctrine, that a surety who pays a debt which has been reduced to a judgment is entitled to have the judgment kept alive for his benefit, and to enjoy, as against the principal debtor, exactly the same advantages which could have been claimed by the judgment creditor.".

The doctrines or principles of subrogation cannot be more succinctly stated than they are by the authority just quoted.

The rule as laid down in Sheld. Subr. (section 11) is that:

"The doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnity from the fund out of which should have been made the payment which he has made to the creditor. It is a mode which equity adopts to compel the ultimate discharge of a debt by him who in equity and good conscience ought to pay it, and to relieve him whom only a creditor would ask to pay. Although as between debtor and creditor the debt may be extinguished, yet, as between the person who has paid the debt and the other parties, the debt is kept alive, so far as may be necessary to preserve the securities."

Mr. Justice Story, in his Equity Jurisprudence (volume 1, § 499), says:

"Courts of equity have gone further in the sureties' favor, and held them entitled, upon payment of the debt due from their principal to the creditor, to have the full benefit of all collateral securities, both of a legal and equitable nature, which the creditor has taken as an additional pledge of his debt."

In Arnold v. Green, 116 N. Y. 572, 23 N. E. 2, Judge Vann says:

"The remedy of subrogation is no longer limited to securities and quasi securities, but includes so wide a range of subjects that it has been called the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, ought to pay it." Cole v. Malcolm, 66 N. Y. 363; Twombly v. Cassidy, 82 N. Y. 155; Townsend v. Whitney, 75 N. Y. 425; Lewis v. Palmer, 28 N. Y. 276.

The rule, therefore, seems to be well settled that a surety, after paying off a debt, shall stand in the place of the creditor, and have all the rights which he has for the purpose of obtaining his reimbursement. He will be entitled to every remedy which the creditor has against the principal debtor; to enforce every security, and all means of payment; to stand in the place of the creditor, not only through the medium of contract, but even by means of securities or contracts entered into without the knowledge of the surety, having a right to have those securities transferred to him, though there was no stipulation for that, and to avail himself of all those securities against the debtor, and it is immaterial by what means the security is created. Lord Eldon, in Mayhew v. Crickett, 2 Swanst. 191, said:

"Sureties are entitled to the benefit of every security which the creditor had against the principal debtor, and whether the surety knows of the existence of those securities or not is immaterial." Garland v. Lynch, 1 Rob. (Va.) 545.

The plaintiff has no legal authority to question the right of the defendant to the securities in his hands applicable to the payment of the debt. It is immaterial, so far as he is concerned, what the legal rights are between the principal debtors and the surety. The plaintiff is not called upon to set up a defense for the debtors, and to litigate their rights. It is sufficient, so far as his rights are concerned, if he receives from the surety payment in full of his claim against the debtors. When the debtors have an opportunity to be heard, they may feel that they are legally and morally obligated to pay the debt, and they may not object to the enforcement of the securities in the hands of the surety. The principal debtors are not parties to this motion, and therefore the plaintiff cannot interpose a defense for them. The motion, therefore, is granted.