COMMERCIAL CASUALTY INSURANCE COMPANY, Appellant, *v.* CAPITAL CITY SURETY COMPANY, Defendant, Impleaded with ISIDOR FEDER and Another, Respondents.

First Department, November 2, 1928.

*Daniel Mungall*, for the appellant.

*Henry Clay Greenberg* of counsel [*Abraham P. Wilkes*, attorney], for the respondents.

PROSKAUER, J.   The assignor of the Ambassador Holding Corporation rented a store to the defendant Gluckstern.   The lease provided that " in case any damage or injury occurring to the glass in the store or damage and injury to the said premises of any kind whatsoever, then the said tenant shall cause the said damage or injury to be repaired as speedily as possible at their own cost and expense."   The plaintiff insured the Ambassador Holding Corporation against loss on account of bodily injuries suffered by reason of its ownership of these premises.   The infant defendant Feder was injured by the fall of glass from the store window.   He and his father sued Gluckstern and the Ambassador Holding Corporation, alleging that the injury was due to the negligent maintenance of the broken glass.   From a judgment against lessor and lessee both appealed.   As security for these judgments, which have been affirmed against both (*Feder* v. *Ambassador Holding Corp.*,

223 App. Div. 752), Gluckstern filed the bond of the defendant Capital City Surety Company, and the landlord filed the bond of its indemnitor, the plaintiff herein. An offer by plaintiff to pay the Feders the full amount of their judgments upon assignments thereof was refused. Thereupon plaintiff, as indemnitor of and surety for the Ambassador Holding Corporation, brought this action to have its rights against Gluckstern and the Capital City Surety Company determined.

The case is brought before this court on an appeal from an order denying plaintiff's motion to restrain the Feders from issuing execution against the Ambassador Holding Corporation during the pendency of this action.

Plaintiff as indemnity insurer will, upon payment, be subrogated to all the rights of its assured, the Ambassador Holding Corporation, including the assured's right, if any, against a joint tort feasor. (*Ocean A. & G. Corp.* v. *Hooker Electrochem. Co.*, 240 N. Y. 37, 47; *Lord & Taylor, Inc.*, v. *Yale & Towne Mfg. Co.*, 230 id. 132; *Wanamaker* v. *Otis Elevator Co.*, 228 id. 192; *Steinfield* v. *Massachusetts Bonding & Ins. Co.*, 79 N. H. 422; *Frankfort General Ins. Co.* v. *Milwaukee Electric R. & Lt. Co.*, 169 Wis. 533.) It is also well settled that one constructively and secondarily liable for the negligence of another has recourse over against the primary and active wrongdoer. (*City of Brooklyn* v. *Brooklyn City R. R. Co.*, 47 N. Y. 475, 484.) Thus in *Ocean A. & G. Corp.* v. *Hooker Electrochem. Co.* (240 N. Y. 37, 47) the defendant manufactured chlorinated lime for sale by the Wander Company. Due to faulty manufacture, the lime caused injuries to many customers of the Wander Company. Plaintiff, as indemnitor of the latter, settled a large number of such claims and sued defendant for the amounts so paid. HISCOCK, Ch. J., said: " It is so well settled as not to require discussion that an insurer who pays claims against the insured for damages caused by the default or wrongdoing of a third party is entitled to be subrogated to the rights which the insured would have had against such third party for its default or wrongdoing. This right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages and the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries. Under the circumstances presented in this case the right is in some of its results not different than would be the assignment by the insured of its right of action against the primary wrongdoer for the fault which has caused the

damages which have been paid by the insurer. (*Hart* v. *West. R. R. Corp.*, 13 Met. 99.) The subrogee acquires rights which as between it and the insured are beyond the power of cancellation and destruction by the latter and under our practice is entitled to enforce these rights by an action in its own name and without joining the insured as a party. (*Lord & Taylor, Inc.*, v. *Yale & Towne Mfg. Co.*, 230 N. Y. 132.) "

In the case at bar it is alleged that Gluckstern, as lessee, had the duty of keeping the windows in repair, and that because of Gluckstern's failure to make the repairs plaintiff's assured has been held liable. Plaintiff, upon payment, has, therefore, a clear right to be subrogated, both as indemnitor of and as surety for the lessor, to the rights of the Feders against Gluckstern.

Defendants Feder resist the injunction on the ground that the court should not delay their legal right to issue execution upon their judgments. There are two answers to their contention. The injunction herein sought in nowise interferes with their right to levy execution against Gluckstern or to sue on the appeal bond of the Capital City Surety Company. Moreover, the Feders can always receive full payment at once from plaintiff upon assigning their judgments, and the final judgment herein can determine the truth of plaintiff's allegation that Gluckstern is primarily liable for the loss. The Feders' argument that they might be subjected to double liability through a similar demand on the part of the Capital City Surety Company is fanciful. The Capital City Surety Company has certainly no greater rights than Gluckstern, and whatever may be Gluckstern's liability to plaintiff's assured, the Capital City Surety Company could not and Gluckstern does not in the affidavit filed by the Feders' attorney claim that the Ambassador Holding Corporation is the primary tort feasor. Moreover, this affidavit specifically states that " no such offer was made."

The real question seems to be not only whether plaintiff is entitled to recourse against Gluckstern, but whether it may go one step further, and by taking an assignment of the judgment have a right against the Capital City Surety Company which put up the appeal bond for Gluckstern. It seems that since plaintiff is entitled to be subrogated to the Feders' right in the judgment, it is equitably entitled to any security for the payment thereof. In *Hinckley* v. *Kreitz* (58 N. Y. 583, 591), CHURCH, Ch. J., said: " In Pennsylvania, under a statute authorizing a stay of execution for a year upon giving security, it has been repeatedly held that the surety for the original debt, upon payment, is entitled to the remedy of the creditor against the surety upon the stay.

(*Burns* v. *Huntingdon Bk.*, 1 Pen. & W. 395; *Pott* v. *Nathans*, 1 W. & S. 155; *Schnitzel's Appeal*, 49 Penn. St. 23.) The reasoning in those cases applies to this, that the later surety suffers no injustice in being obliged to do what he has agreed; and that his equities are subordinate to those of the original surety, because his interposition may have been the means of involving the first surety in ultimate liability to pay."

Similarly it was held in *Smith* v. *National Surety Co.* (28 Misc. 628; affd., 46 App. Div. 633) that a surety on an appeal bond in an action for malicious prosecution against several defendants, was, upon payment of the judgment, entitled to be subrogated to the plaintiff's rights against all the defendants and that the judgment creditor could be compelled to assign not only the judgment itself, but also a contract which he had made with one of the defendants, whereby that defendant agreed to pay a fixed sum in lieu of being held liable on the judgment.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.