RICHARD F. DEHN, A MINOR, BY RICHARD R. DEHN,
HIS FATHER AND NATURAL GUARDIAN, v.
S. BRAND COAL & OIL COMPANY.
CITY OF ST. PAUL, ADDITIONAL DEFENDANT.
RICHARD R. DEHN v. SAME.
JAMES C. LACHOWITZER, A MINOR, BY GEORGE P.
LACHOWITZER, HIS FATHER AND NATURAL
GUARDIAN, v. SAME.
GEORGE P. LACHOWITZER v. SAME.[1]

February 19, 1954.

Nos. 36,059, 36,060.

[1]Reported in 63 N. W. (2d) 6.

*Timothy P. Quinn,* Corporation Counsel, and *Marshall F. Hurley,* Assistant Corporation Counsel, for appellant city of St. Paul.

*Charles H. Weyl,* for appellant S. Brand Coal & Oil Company.

*Carlson & Wiblishauser,* for respondents.

THOMAS GALLAGHER, JUSTICE.

These are actions for damages for injuries sustained September 25, 1950, by James C. Lachowitzer and Richard F. Dehn, minors, each of the age of 12 years at the time of the accident. The accident occurred on property owned by defendant S. Brand Coal & Oil Company and formerly leased to the city of St. Paul for a public dump, when the boys fell through its surface crust and were burned by hot ashes or fire smoldering beneath such surface.

Originally, S. Brand Coal & Oil Company, a corporation, was named as sole defendant. It promptly moved for an order in each action permitting it to join the city of St. Paul as an additional party defendant, and on September 21, 1951, the court so ordered. In the cross bill in each action thereupon served upon the city, the coal company sought indemnity from the city for any judgments that might be recovered by plaintiffs on the ground that on January 1, 1950, the expiration date of the lease, the city had returned the property to it with a surface crust of earth, rubbish, and other substances, under which smoldering fires burned from time to time and which the city knew or should have known would not support the weight of children known by the city to play thereon. It further alleged that as thus returned the premises constituted a dangerous instrumentality attractive to children and that the negligent acts of the city as described constituted the proximate cause of any damages sustained by plaintiffs for which the coal company might be held liable.

At the close of the trial in response to a specific instruction, the jury returned a special verdict as follows:

"We the Jury in the above entitled cases, find that the additional defendant, City of Saint Paul, WAS negligent in the maintenance

of the condition claimed by the plaintiffs and in failing to correct the condition or advise its lessor thereof upon expiration of the lease."

It also returned verdicts against the coal company in favor of James for $2,400; for his father and natural guardian in the sum of $1,300; for Richard in the sum of $5,125; and for his father and natural guardian, $1,400. Subsequently, the coal company moved in each action for judgment notwithstanding the verdict or a new trial and, if such motion were denied, that it have judgment against the city of St. Paul for the amounts of the verdicts. The city likewise moved in the alternative for judgment notwithstanding the verdict or a new trial. On February 4, 1953, the court denied both of such motions in all actions.

On appeal the coal company contends that the evidence failed to establish the four conditions requisite to liability for maintenance of an artificial condition hazardous for children prescribed by this court as specified in Restatement, Torts, § 339, to wit:

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

The coal company further contends that, since the hazardous condition was created by the city, the latter is liable for indemnity to it as landlord for any damages it sustained because of the hazardous condition. The city contends that the evidence is insufficient to sustain the verdicts under the four requisites above set forth and that, because of its immunity in performing a governmental function

in the maintenance of this public dump, it is not liable to defendant coal company for any damages arising therefrom.

The property covered by the lease consists of four city blocks bounded on the south by Minnehaha street, on the west by North Chatsworth street, on the north by the Great Northern Railway, and on the east by North Victoria street. In 1938 it was leased to the city for a public dump and was so used until the lease expired January 1, 1950.

For about a year prior to the accident the dump had been maintained at about the center of the southerly block. A roadway or path frequently used by children passed near it. Just south of it was a field where children often played. It was customary for boys to go upon the dump and search the debris for bottles or other objects of play. Both of the injured boys had been on it or in its vicinity a number of times shortly prior to the accident.

About 3:30 p. m. the day of the accident, Richard, with Donald Hanson, James Peterson, and John Wallin, friends of his age, went to the dump to collect pumpkins growing thereon. With this in mind, Richard started walking through it, and while so doing fell through the surface crust into a fire smoldering beneath which seriously burned his feet and legs. He extricated himself and ran about a block before falling as a result of the burns. Police officers, who arrived shortly afterward, took him to Ancker hospital for treatment.

A short time later the officers returned to the dump and endeavored to locate the fire therein. This time James C. Lachowitzer and two or three other boys some of whom had not been there with Richard accompanied them. The officers were shown the spot where Richard had fallen through, and they began probing with sticks to locate the fire beneath the surface. Seeing a longer stick near James, one of the officers asked him to get it, and while James went forward to do so he fell through the surface in the same manner that Richard had fallen, likewise sustaining burns to his feet and legs. He was also taken to Ancker hospital by the officers.

Thereafter the officers returned to the dump a third time where they then met a detail from the St. Paul fire department. They

pointed out to the latter the spot where the boys had fallen through where live coals were smoldering beneath the surface. Thereupon police officer Daniel B. Witt, in moving forward to look at the fire, fell through the surface and sustained burns to his left foot and ankle.

Testimony was submitted that there was no evidence of fire or smoke on the surface of the property and that the boys who accompanied the police officers had to locate the exact spot where Richard fell through before the fire could be discovered; that nearby residents had frequently protested against the operation of the dump and as a result the city had ordered it closed January 1, 1950; that children played in and about it three or four days a week; that both before and after it had been ordered closed, smoke often could be seen rising therefrom; that the St. Paul fire department had been called to extinguish fires therein on an average of at least once a week while the dump was in operation; that after it was closed the fire department had been called out on at least two occasions to extinguish fires there; that after the accident 48,000 gallons of water had been poured into it to kill the fire smoldering beneath the surface. John Howard Kill of the St. Paul fire department testified that the place where the fire was smoldering at the time of the accident was about six by ten feet in area, with a tributary therefrom one to two feet in width extending approximately 50 to 60 feet.

■ We believe that the evidence is sufficient to sustain a finding that the four requisite conditions specified in Restatement, Torts, § 339, as above set forth, were present to establish the liability of defendant S. Brand Coal & Oil Company. The latter argues principally that the evidence is insufficient to establish the second requisite—that it should have known and realized that a condition was maintained on its property which involved an unreasonable risk of serious injury to children trespassing thereon. We disagree with. this. By virtue of its lease to the city and otherwise, it was aware that for 12 years prior to January 1, 1950, its property had been used as a public dump. Albert J. Brand, president of the company, testified that on many occasions he passed the property while

traveling from his home to his place of business; that he knew the roadway which crossed near the dump was used as a short cut by adults and children; that he often saw people searching the dump while the city operated it; that sometime in November or December 1949 an injunction had been obtained against the city restraining it from operating the dump because of smoke; that because of this the city did not renew the lease with his company when it expired January 1, 1950; that he knew there had been many complaints in 1949 because of fires therein; that his company had frequently received telephone calls because thereof, but that he had never gone there to investigate conditions; that while the city operated the dump he had frequently seen smoke arising from it—that "it was burning all of the time"; that he recalled driving past it when the smoke was so bad it was difficult to drive across the street; and that after the city had returned the property to his company on January 1, 1950, he had never returned to look at it.

Testimony was submitted by others living in the vicinity that children frequently played on the dump both prior and subsequent to January 1, 1950; that prior to January 1, 1950, the fire department had been called out many times to put out fires therein; that on at least two occasions subsequent to January 1, 1950, the fire department had been called for such purpose; and that after the dump was closed smoke was frequently seen therein.

We are of the opinion that the evidence outlined is amply sufficient to establish the presence of the requisites of the second condition above specified that defendant coal company should have known and realized that there was an artificial condition on its property which involved an unreasonable risk of injury to children trespassing thereon.

■ The sufficiency of the evidence to establish the other three conditions cannot be seriously challenged. There is ample evidence to sustain a finding that defendant coal company should have known that children were likely to trespass on the dump; that because of their youth they would not be likely to discover the condition or realize the risk involved in coming within the dangerous area; and that the utility to defendant coal company in maintain-

ing it was slight as compared to the risk to such children. The factual situation with reference to the establishment of such conditions is similar in a large measure to that involved in Doren v. Northwestern Baptist Hospital Assn. 240 Minn. 181, 60 N. W. (2d) 361. See, also, Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Gimmestad v. Rose Brothers Co. 194 Minn. 531, 261 N. W. 194.

Nor do we see why a distinction should be made relative to James C. Lachowitzer. He was attracted to the area and had frequently played there in the same manner as had Richard. The fact that on this particular occasion he followed police officers thereto, and endeavored to assist them in locating the fire would not seem sufficient to eliminate liability on the part of defendant coal company for its maintenance of the condition which involved an unreasonable risk to boys of the age of James and Richard.

■ The obligations which existed between defendant coal company and the city of St. Paul, imposed by the lease between them, is governed by statutes and principles applicable to landlord and tenant. It is well settled that no direct liability attached to the city of St. Paul for its operation or maintenance of this public dump. The operation of a city dump by a municipality has been held to be a governmental rather than a proprietary function (Dehanitz v. City of St. Paul, 73 Minn. 385, 76 N. W. 48; 26 Minn. L. Rev. 293), and it is well settled that a municipality is exempt from liability for damages arising out of the performance of a governmental function. St. John v. City of St. Paul, 179 Minn. 12, 228 N. W. 170; Snider v. City of St. Paul, 51 Minn. 466, 53 N. W. 763, 18 L. R. A. 151; Bryant v. City of St. Paul, 33 Minn. 289, 23 N. W. 220.

It is clear from the foregoing that whatever liability attaches to the city for indemnity must arise out of the covenants in the lease, whether express or implied, and the damages, if any, sustained by the coal company because of the city's violation thereof.

■ The record is silent as to whether the lease was written or oral. It follows that only the implied covenants ordinarily arising

out of the relationship of landlord and tenant may be considered. It is well established that one such implied covenant covers the obligation of a tenant to surrender the premises at the expiration of his term in as good a condition as when they were taken, ordinary wear and tear and damages from the elements excepted. United States v. Bostwick, 94 U. S. 53, 24 L. ed. 65; Myers v. Hussenbuth, 32 Misc. 717, 65 N. Y. S. 1026; Earle v. Arbogast, 180 Pa. 409, 36 A. 923; Wilson v. Prescott, 62 Me. 115; see, 64 L. R. A. 649, note IIa.

■ It likewise appears well established that the breach of a covenant concerning the condition of leased premises renders the covenantor, whether he be the landlord or the tenant, liable to the covenantee for any amounts paid or liability incurred by the latter on account of an injury to a third person caused by such breach. Olson v. Schultz, 67 Minn. 494, 70 N. W. 779, 36 L. R. A. 790. See, Annotation, 157 A. L. R. 623, citing Trego v. Rubovits, 178 Ill. App. 127; City of Lowell v. Spaulding, 58 Mass. (4 Cush.) 277, 50 Am. D. 775; Schenk v. Forrester, 102 Mo. App. 124, 77 S. W. 332; Commercial Cas. Ins. Co. v. Capital City Surety Co. 224 App. Div. 500, 231 N. Y. S. 169; Commercial Cas. Ins. Co. v. Capital City Surety Co. 224 App. Div. 553, 231 N. Y. S. 494; Newell Bridge & Ry. Co. v. East Liverpool Trac. & Light Co. 7 Ohio App. 241, 29 O. C. A. 5, 30 Ohio Cir. Dec. 436; Hanley v. Ryan, 87 Pa. Super. 6; Bruder v. Philadelphia, 302 Pa. 378, 153 A. 725. See, also, Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698.

■ Here, the jury in a special finding determined that defendant city was negligent in the maintenance of the condition and in failing to correct it upon the expiration of the lease. The resultant breach of the implied covenant to return the premises in as good a condition as when they were received by the city gave rise to the subsequent actions and verdicts against defendant coal company. In consequence, under the premises above set forth, it must follow that the city became liable to the coal company for the verdicts obtained against the latter in the subsequent actions.

The order denying the motions of defendants for a new trial is affirmed. The order denying the motion of defendant S. Brand

Coal & Oil Company for judgment against the city of St. Paul for the amounts of the verdicts returned against the former is reversed and the cases remanded with directions that the coal company have judgment in its favor against the city of St. Paul for the amounts thereof.