# PETER LAMETTI v. PETER LAMETTI CONSTRUCTION COMPANY.

232 N. W. 2d 435.

August 8, 1975—No. 44988.

*Cragg & Bailly* and *J. W. Cragg,* for appellant.

*Jardine, Logan & O'Brien, John R. O'Brien, Robert J. Tyrrell,* and *Denis Opsahl,* for respondent.

Heard by Rogosheske, Todd, MacLaughlin, Yetka, Scott, and Chanak, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Appeal from the denial of defendant's motion for judgment notwithstanding verdict or for a new trial in a lawsuit brought to reapportion the amount paid separately by the liability insurers of plaintiff and defendant in settlement of a personal injury claim. Finding proper the trial court's disposition ordering apportionment of the settlement amount in accordance with the jury's special verdict, we affirm.

On August 25, 1969, 14-year-old Cecilia Weeks sustained crippling injuries when she dove into a pond on land owned by plaintiff, Peter Lametti, and being developed by defendant, Peter Lametti Construction Company. Cecilia's personal injury suit, asserted by her father as natural guardian against both Peter Lametti and Peter Lametti Construction Company, was in the initial amount of $1,000,000. Each cross-claimed against the other. Peter Lametti was insured by Great American Insurance Company with policy limits of $100,000. The construction company was insured by Hartford Insurance Company with policy limits of $100,000 and also had excess liability coverage with policy limits of $1,000,000. Immediately prior to trial, a total settlement in the amount of $150,000 was agreed to by Cecilia, her father, and the insurance companies and approved by the trial court. Plaintiff's insurer, Great American, paid $100,000 toward the settlement amount and defendant's insurer, Hartford Company, paid $50,000. Both of the defending parties and their in-

surers received releases, and their cross-claims against each other were dismissed without prejudice.

Although Peter Lametti and the construction company were the named defendants in the personal injury suit and continue as the named adverse parties in this suit for contribution, Great American and Hartford Company effectively controlled both the defense and settlement in the personal injury case and the trial in this case. Great American, utilizing the loan-receipt device, brought this action in the name of Peter Lametti, seeking to apply the principles of equitable contribution in order to reapportion the $150,000 settlement amount between the insurers on the basis of the comparative negligence and respective liability of the insured parties. The case was tried in district court before a jury, which by special verdict apportioned liability at 10 percent to Cecilia Weeks, 35 percent to Peter Lametti, and 55 percent to the construction company. On the basis of the jury's determination of liability, the court ordered judgment against defendant construction company in the amount of $41,500. Defendant appeals from the denial of its motion for judgment notwithstanding verdict or for new trial.

Peter Lametti purchased the property on which the injury occurred in 1965. The land was swampy, and Lametti intended to drain it, construct large ponds upon it, and then sell the land surrounding the ponds as residential lots. To accomplish this end, he hired Peter Lametti Construction Company, a building and earthmoving concern incorporated in 1952 of which Peter Lametti is president and controlling stockholder. Nearly all the equipment used to develop the property belonged to defendant construction company, and the men who worked on the development were employees paid by the company. Peter Lametti supervised the work and was paid a salary by the company. There was no written agreement between Lametti and the company concerning the development of the property.

During the summer of 1969, the banks of the ponds were being sloped and contoured, necessitating pumping operations which

muddied the water in the ponds. The company had stored large planks and other lumber in a pile on the property. On various occasions, acting pursuant to Peter Lametti's instructions to keep children away from the area, company employees removed pieces of lumber which were being used as diving boards at the ponds and posted "no trespassing" signs on the property.

On the day of the injury, an employee of the company was working at a point across the pond from the area where the injury occurred. He was summoned by a group of young people and discovered Cecilia lying face down in 3 or 4 feet of murky water near a diving board where the young people had been swimming and diving. The employee pulled the unconscious girl from the water, and she was revived by mouth-to-mouth resuscitation. The testimony of the young people who were swimming at the pond on that day indicates that Cecilia had been swimming and wading for about 1½ hours before the injury occurred. She had jumped or dived from the makeshift diving board five or six times before the injury-causing dive. She testified by deposition that she has no memory of the events surrounding the accident.

On this appeal defendant contends initially that contribution does not lie because the parties had different grounds for liability, because plaintiff did not secure a release for defendant by its payment, and because plaintiff was a volunteer in its payment of $100,000. We find the arguments of defendant without merit. As we have often indicated, it is not essential to an action for contribution that the one from whom contribution is sought be in precisely the same position regarding liability to the injured party as the one seeking contribution. It is enough that the parties share a common liability to the injured plaintiff. Koenigs v. Travis, 246 Minn. 466, 75 N. W. 2d 478 (1956); American Auto. Ins. Co. v. Molling, 239 Minn. 74, 57 N. W. 2d 847 (1953). See, also, Chicago, R. I. & P. R. Co. v. Chicago & N. W. Ry. Co. 280 F. 2d 110 (8 Cir. 1960). Here, the trial court, by its refusal to direct a verdict for defendant, found jury questions in the

existence and the extent of liability of the parties for Cecilia's injury. The jury, by answers to the special verdict, found both parties negligent. Thus the common liability here is of the simplest kind; both parties were joint tortfeasors and their negligence caused the injury.

Nor do we find merit in defendant's contention that plaintiff did not by its payment of $100,000 secure a release for defendant. In advancing this argument, defendant attempts to characterize the agreement reached at the time of settlement of the personal injury claim as one by which each insurer separately settled the claim against it and secured its own release. Our reading of that agreement, which is in the form of a stipulation entered into before the trial court, persuades us that defendant's characterization is inaccurate.[1] At the time of settlement, Weeks demanded a total amount of $150,000 and refused to release either party until that demand was met. Great American advanced $100,000 toward the amount, expressly conditioning its payment on plaintiff's behalf on the preservation of his right to proceed against defendant company and its insurer, Hartford Company. The stipulation indicates that Hartford understood and agreed to the condition, and the trial court accordingly dismissed the cross-claims without prejudice to the right of either party to proceed against the other. Upon its receipt of the $150,000 total amount, Weeks released both parties. Under these circumstances, it is playing with words to assert that the payment by plaintiff's insurer did not secure a release for defendant and its insurer. Defendant has been released from the personal injury claim, which release could not have been secured without the amount advanced by plaintiff. Thus, the requirement that the party from whom contribution is sought must have secured a release by the payment of the party seeking contribution, referred to in Gustafson v. Johnson, 235 Minn. 358, 51 N. W. 2d 108 (1952), and Town-

---

[1] The stipulation appears in the transcript of the personal injury case, which was submitted into evidence in this contribution case.

ship of Canosia v. Township of Grand Lake, 80 Minn. 357, 83 N. W. 346 (1900), has been met.

With reference again to the stipulated agreement, we find no merit in defendant's characterization of plaintiff as a mere volunteer in its settlement payment. The fact that plaintiff made payment only when faced with an imminent trial of the personal injury lawsuit and a potentially large verdict, and insisted on the preservation of its claim to contribution against defendant, negates any inference that plaintiff was acting as a volunteer in the sense that would, under the maxim that equity will not aid a volunteer, render it without remedy in contribution. Rusch v. Korth, 2 Wis. 2d 321, 86 N. W. 2d 464 (1957).

Defendant additionally urges as error the failure of the trial court either to direct a verdict on Cecilia's negligence or to instruct the jury on her assumption of risk. Since we believe that a jury question was presented on the possible negligence of Cecilia, but sufficient evidence was not presented to support a jury finding of assumption of risk, we hold that the trial court did not err in either respect. The primary function of the jury in this contribution case was to determine the percentage of liability of the parties in order that a ratio of apportionment of the total settlement amount might be established on a factual foundation. The trial court's inclusion in the special verdict of a question on Cecilia's negligence was proper because the evidence supports a finding of some degree of her negligence and because, in order properly to establish a ratio of liability of the joint tortfeasors, the jury was necessarily required to consider all those who might be found negligent under the evidence. See, Juvland v. Mattson, 289 Minn. 365, 184 N. W. 2d 423 (1971). The evidence does not, however, rise to that level of conclusiveness as would require an instruction on her assumption of risk. Assumption of risk may be involved only where it appears that the hazard is known to the actor or so plainly observable that he is charged with knowledge of it, and where it further appears that the actor intelligently acquiesced in the risk or displayed a know-

ing willingness to encounter it. Coenen v. Buckman Building Corp. 278 Minn. 193, 153 N. W. 2d 329 (1967); Meulners v. Hawkes, 299 Minn. 76, 216 N. W. 2d 633 (1974); Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971). Here, the 14-year-old injured girl had watched others dive and had made five or six dives herself without incident. She gave no indication of any awareness of the danger to any of the other swimmers, nor did any of them point out the danger to her. She has no memory of the events surrounding the dive and is thus unable to provide any indication that she knew, appreciated, and voluntarily assumed the risk of serious injury. Under this evidence, no jury question on assumption of risk is present which, if the issue were submissible under the law prior to Springrose v. Willmore, *supra,* and under the parties' stipulation upon settlement, may have defeated plaintiff's claim for contribution, even though the jury found plaintiff and defendant also negligent under the form of the special verdict submitted.

Defendant argues further that the burden of proof on the issue of liability of the construction company is upon the plaintiff as the party seeking contribution, and that plaintiff has failed to sustain that burden. The trial judge's instructions to the jury properly placed the burden of proof upon plaintiff, and plaintiff readily acknowledged that the burden rested on him on oral argument before this court. While we recognize the difficulty at trial of determining whether the acts of Peter Lametti were performed in his capacity as owner of the property or as president of the company, we believe the jury was provided with evidence which, when viewed in its entirety, supports the jury's percentage apportionment of negligence to each of the joint tortfeasors. Not only were there acts of Peter Lametti which the jury could reasonably believe to have been done in his role as agent of the company rather than as owner of the land, but there were also negligent acts performed by other employees of the company which the jury no doubt considered in assessing the company's imputed negligence. Workmen on the property were paid by the

company and were charged by Peter Lametti, their supervisor and foreman, with the responsibility of keeping children away from the property and of removing pieces of lumber which were being used as diving boards. On past occasions the workmen had inspected the area and broken up makeshift diving boards, for which work they were paid their regular wage by the company, but on the day of the injury no inspection or attempt to chase the children away or to break up their diving board was made. Although defendant contends that the jury was without the benefit of an adequate instruction on the question of whether the employees were "loaned servants" of Peter Lametti as landowner, our reading of the court's instruction on that issue shows it to be correct and adequate in all respects under the guidelines set forth in Nepstad v. Lambert, 235 Minn. 1, 50 N. W. 2d 614 (1951). It may be inferred from its percentage determination that the jury found negligence by the employees as agents of the company in their acts or failures to act, as well as negligence by Peter Lametti in his capacity as company president and job foreman, and accordingly imputed their negligence to the company.

Finally, defendant's allegation of impropriety in the testifying of an attorney who was involved in the personal injury settlement, and who is a partner in the law firm representing plaintiff in this case, is without merit in view of the fact that most of the testimony now characterized as prejudicial to defendant's case was elicited by defendant's cross-examination.[2]

Affirmed.

---

[2] See, A. B. A. Code of Professional Responsibility, EC 5-9 and EC 5-10 (adopted August 4, 1970, 286 Minn. ix).