Vernon E. BIGHAM, Respondent,

v.

J. C. PENNEY COMPANY, defendant and third party plaintiff, Appellant,

v.

NORTHERN STATES POWER COMPANY, third party defendant, Appellant.

Nos. 47526, 47527.

Supreme Court of Minnesota.

May 26, 1978.

Rehearing Denied June 29, 1978.

Johnson, Fredin, Killen, Thibodeau & Seiler and Steven C. Fecker, Duluth, for J. C. Penney Co.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and R. D. Blanchard, Minneapolis, for Northern States Power.

Carroll, Cronan, Roth & Austin and Donna D. Geck, Minneapolis, Berndt, Overson, Nelson & Smith, Mankato, for respondent.

Heard before SCOTT, WAHL, and IRVINE, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal by J. C. Penney Company (Penney) from an order of the Blue Earth County District Court denying its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Northern States Power Company (NSP) also appeals from the same order denying its motion requesting that NSP be found not negligent and not liable for contribution as a matter of law. We affirm in part, reverse in part, and remand with instructions.

Plaintiff, an NSP lineman since 1960, was part of a crew that responded about 3:30 p.m. on June 13, 1968, to a call to replace a broken insulator on a "bus bar" at a Mankato, Minnesota, substation. The bus bar was a hollow copper tube, attached to a steel support about 20 feet above the ground, carrying 4,160 volts of electricity. Because the insulator was broken, the bus bar was no longer firmly supported at one end. The crew and supervisory personnel discussed whether the job could be done safely without de-energizing the bus bar, and agreed that it could.[1]

Plaintiff and another member of his crew, Lawrence Voeltz, climbed a wooden ladder to the insulator. Plaintiff was wearing Penney's "Big Mac" 65 percent polyester-35 percent cotton work shirt and pants, recently purchased by his wife, and safety equipment provided by NSP. To support the bus bar while they worked, plaintiff tied a rope around it. As he secured the rope a "flash-over" occurred. A flash-over is an electric arc or "fire ball"

---

1. It would have been necessary either to shut off service to a substantial part of Mankato during hours of peak demand, or to put a substantial overload on another transformer, to de-energize the bus bar. A storm was threatening, which would have prevented work on the substation that evening. It was agreed by all, including plaintiff, that the job, with bus bar energized, was routine. Plaintiff did have the right to demand that the equipment be de-energized.

producing heat up to 11,000° F. This flash-over melted parts of the copper bus bar and porcelain insulator, and caused first-, second-, and third-degree burns to plaintiff's face, neck, abdomen, groin, and legs, including 50 percent of his right leg and 75 percent of his left leg.

As a result, plaintiff was hospitalized for 8 months, and received a number of skin grafts. He suffered disfiguring scars and reduced movement of his legs. He lost approximately $11,610 in wages from his lineman's job and a part-time, tree-trimming business. He was able to return to work for NSP about 1 year after the accident.

Plaintiff brought the present action against Penney in June, 1972, alleging that he should have been warned that his work clothes were flammable and if ignited would produce a "melt and cling" effect that would lead to unusually severe burns. Penney impleaded NSP.

The case was tried in April 1976. The jury awarded plaintiff $310,000 general damages and $50,000 medical and hospital expenses. It apportioned the causal negligence as follows: Penney, 50 percent; NSP, 30 percent; plaintiff, 20 percent. The trial court found that plaintiff had assumed the risk of flash-over injuries, but not the risk of having his burns aggravated by the work clothes. Accordingly, judgment was ordered against Penney for $288,000, and NSP was ordered to contribute $108,000. Subsequently, after hearing motions for judgment notwithstanding the verdict and for a new trial, the trial court reduced the award of medical and hospital damages to $25,000, which lowered the total judgment to $268,000. All other motions were denied.

As a result of our holding, only the following issues need be discussed:

(1) Did plaintiff assume the risk for all of his injuries?

(2) Are the jury's findings that the work clothing was not defective, but that Penney was guilty of unspecified negligence, irreconcilable?

(3) Was the trial court's determination of the right to ask leading questions so improper as to require a new trial?

(4) Did the jury award excessive damages?

(5) Did the trial court err in ruling that plaintiff assumed all risks attributable to NSP, but at the same time that Penney was entitled to contribution from NSP?

1. The trial court found that "[p]laintiff assumed the risk of injury due to flash over," but that he "did not know or appreciate the flammable characteristics of the work clothing he was wearing, sold by defendant Penney." The court did not instruct the jury on assumption of risk. The essence of Penney's appeal on this point is that it disagrees with the court's view that two separate risks were involved, that of the flash-over and that of the "melt and cling" effect of the work clothing. Thus Penney argues that it was entitled to judgment notwithstanding the verdict because the jury found that plaintiff assumed the risk of the flash-over; or that it should be granted a new trial with a separate instruction on assumption of risk because this case arose before Springrose v. Willmore, 292 Minn. 23, 192 N.W.2d 826 (1971).[2]

Expert witnesses disagreed as to whether, and to what extent, the injuries plaintiff received from the flash-over were aggravated by the polyester in the work clothes. The verdict and trial court memorandum indicate that the jury accepted this aggravated-injury theory.[3] In Montes v. Betcher, 480 F.2d 1128 (8 Cir. 1973), the court held that the plaintiff, who was injured while diving off defendant's boat dock, assumed the risk of hitting the lake bottom but not that of hitting a jagged piece of concrete,

---

2. In Springrose v. Willmore, 292 Minn. 23, 192 N.W.2d 826 (1971), we held that normally there should not be an instruction on assumption of risk because this issue could be decided as an aspect of comparative negligence; this holding did not, however, apply retroactively.

3. The trial court noted that Lawrence Voeltz, who was also caught in the flash-over aad burned, was wearing all-cotton work clothes, but was hospitalized for only 2 weeks.

of which defendant failed to warn him. The court correctly refused to instruct the jury on assumption of risk as to the concrete. *Smith v. J. C. Penney Company, Inc.*, 269 Or. 643, 525 P.2d 1299 (1974), is a case which is factually closer to the present one. There, plaintiff, who was wearing an acrylic synthetic fur coat, received much more serious burns in a gas station fire than a person standing nearby who was not wearing synthetic fabric. The Oregon Supreme Court stated that "[t]he jury could infer from this that plaintiff would not have incurred severe burns to her lower extremities if she had not been wearing the coat. There was evidence that burning material dripped from the coat * * *." 269 Or. 657, 525 P.2d 1305. Both of these cases support the trial court's two-risk analysis of the present accident.

■ The issue becomes, then, whether plaintiff assumed the risk of the flammable characteristics of the clothing. There were no warning tags with respect to flammability of the work clothes. An element of assumption of risk is that plaintiff must have known of the danger involved and must have made an intelligent choice to encounter it. We therefore hold that the trial court was correct in denying the requested instruction. *Lange v. Nelson-Ryan Flight Service, Inc.*, 263 Minn. 152, 157, 116 N.W.2d 266, 270 (1962), certiorari denied, 371 U.S. 953, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963); *Lametti v. Peter Lametti Const. Co.*, 305 Minn. 72, 77, 232 N.W.2d 435, 440 (1975); *Coenen v. Buckman Building Corp.*, 278 Minn. 193, 204, 153 N.W.2d 329, 337 (1967).

To be distinguished are cases cited by Penney where a plaintiff encounters a known danger only to have it turn out to be more serious than he recognized. *Rausch v. Julius B. Nelson & Sons, Inc.*, 276 Minn. 12, 149 N.W.2d 1 (1967), and *Simpson v. May*, 5 Wash.App. 214, 486 P.2d 336 (1971). In these cases, only one risk was encountered, while the present situation includes two, one known and assumed, the other unknown and thus legally unassumable.

■ 2. In its special verdict, the jury found that the work clothes bought by plaintiff's wife were not "in a defective condition unreasonably dangerous to the plaintiff"; that Penney breached neither an express nor an implied warranty with respect to the clothing; and that Penney was causally negligent. Penney now argues that the first two findings preclude the third, thus entitling it to judgment notwithstanding the verdict or, in the alternative, a new trial.

Penney relies chiefly on the case of *Halvorson v. American Hoist & Derrick Co.*, 307 Minn. 48, 240 N.W.2d 303 (1976). In that case, a highway construction worker received a shock from a piece of metal suspended from a crane when the crane came in contact with a power line. The jury found that the crane was not defective, but that the crane manufacturing company had been negligent. This court found that the verdict was "inconsistent and irreconcilable." 307 Minn. 56, 240 N.W.2d 307. In *Halvorson*, however, this court reasoned that the only issue the jury had considered regarding both products liability and negligence was the absence of certain safety devices which might have prevented the shock. There was no failure-to-warn issue in that case because it was clear that the crane's operator had disregarded an explicit warning in the crane's instruction manual. As a result, it was held that "American Hoist was not negligent as a matter of law * * *." This court seemed to imply, in other words, that while the questions of negligent design and manufacture may be subsumed in a jury's decision that a product is not defective, failure to warn of potential hazards from the use of a product is a separate issue. This analysis of the *Halvorson* case is consistent with the discussion of that case by the Eighth Circuit Court of Appeals in *Bjerk v. Universal Engineering Corp.*, 552 F.2d 1314 (8 Cir. 1977). Had there been no warning, it appears that this court would have reached a different conclusion concerning the consistency of the jury's verdict. See, also, *Skaggs v. Clairol Incorporated*, 6 Cal.App.3d 1, 85 Cal.Rptr. 584 (1970), where, had the defendant not

warned consumers of the possibility of allergic reactions to its product, recovery could have been sought under either strict liability or negligence theories.

While it is true, as Penney claims, that in jurisdictions which sharply distinguish strict products liability from negligence, the former may often provide broader grounds for a finding of liability than the latter, the trial court in the present case instructed the jury on products liability in terms of defects which could injure "an ordinary consumer."[4] 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II, 118 S. See, *Hamilton v. Hardy*, 549 P.2d 1099 (Colo.App.1976). Plaintiff, whose work subjects him to fire hazards, is in a position analogous to that of a consumer who has a common allergy. See, Restatement, Torts 2d, § 402A, comment *j*. The Eighth Circuit Court of Appeals considered that sort of situation in *Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 993 (8 Cir. 1969), and concluded that " * * * where a drug was manufactured without negligence, but is unreasonably dangerous if a reasonable warning of a side effect is not given, * * * the manufacturer may be held liable for the injury resulting from the failure to give a warning reasonable under the circumstances." Minnesota courts repeatedly have held suppliers of products liable for negligence for products which are not in themselves defective in the sense of being flawed, but which are rendered dangerous by lack of instructions or warnings. *Clark v. Rental Equipment Co. Inc.*, 300 Minn. 420, 220 N.W.2d 507 (1974); *McCormack v. Hankscraft Co. Inc.*, 278 Minn. 322, 154 N.W.2d

488 (1967); *Lovejoy v. Minneapolis-Moline Power Implement Co.*, 248 Minn. 319, 79 N.W.2d 688 (1956).

As the United States Supreme Court held in *A. & G. Stevedores v. Ellerman Lines*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807 (1962), the Seventh Amendment to the Constitution of the United States requires that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." See, also, *Lutterman v. Studer*, 300 Minn. 507, 217 N.W.2d 756 (1974), and *Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63 (1967). In this case, the claimed inconsistencies in the verdict may be resolved to read that the work clothing was not "defective" because it was not unreasonably dangerous to the average consumer, but that Penney was negligent in selling it without warnings of its flammability.

3. Both plaintiff and NSP were permitted by the trial court to cross-examine Lawrence Voeltz, plaintiff's fellow employee. Penney argues that this was improper because Voeltz was not an "adverse party," and that the use of leading questions in cross-examining him helped him to testify in some way which was prejudicial to Penney.

Plaintiff's cross-examination of Voeltz appears to have been proper under Rule 43.02, Rules of Civil Procedure, if an "adverse party" includes a party who may be liable for contribution should a plaintiff succeed on his claim.[5] This precise point

4. 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II, 118 S, provides: "A product is in a defective condition if, at the time it leaves the seller's hands, it is in a condition which is unreasonably dangerous to the ordinary user.

"A condition is unreasonably dangerous if it is dangerous when used by an ordinary consumer who uses it with the knowledge common to the community as to the product's characteristics and common usage."

5. The text of Rule 43.02, Rules of Civil Procedure, reads: "A party may interrogate an unwilling or hostile witness by leading questions. A party may call an adverse party or his man-

aging agent or employe or an officer, director, managing agent or employe of the state or any political subdivision thereof or of a public or private corporation or of a partnership or association or body politic which is an adverse party, and interrogate him by leading questions and contradict and impeach him on material matters in all respects as if he had been called by the adverse party. Where the witness is an adverse party he may be examined by his counsel upon the subject matter of his examination in chief under the rules applicable to direct examination, and may be cross-examined, contradicted and impeached by any other party adversely affected by his testimony. Where the witness is an officer, director, managing

has not been determined in Minnesota. In *Klingbeil v. Truesdell*, 256 Minn. 360, 98 N.W.2d 134 (1959), the trial court was held to have been correct in denying counsel of one codefendant permission to cross-examine the other concerning matters in which their interests were the same. In the present case, it could be said that plaintiff and NSP had adverse interests regarding assumption of risk and damages. Moreover, many Minnesota cases have held that the trial court's decisions on the right to ask leading questions should be sustained unless there is a clear abuse of discretion. *Klingbeil v. Truesdell, supra; Ossenfort v. Associated Milk Producers, Inc.*, Minn., 254 N.W.2d 672 (1977); *State v. Dille*, 258 N.W.2d 565 (Minn.1977). Without a clear showing by Penney of specific prejudice, it seems the trial court's ruling on this point should be upheld.

NSP argues that Voeltz was an adverse party because he was plaintiff's friend and clearly "identified with" him—in the language of Rule 611(c), Rules of Evidence—on several contested issues. It may have been technically improper to allow NSP to cross-examine him on this basis because Rule 611(c) was not then in effect. NSP's cross-examination of Voeltz was, however, not only quite brief, but also was devoted exclusively to a point on which NSP and Penney had a common interest—plaintiff's assumption of the risk of flash-over. Thus, no demonstrable prejudice to Penney arose, and if the trial court did, in fact, abuse its discretion on this point, the resulting error was harmless.

4. The jury awarded plaintiff $310,000 general damages and $50,000 for medical and hospital expenses. The trial court, con-sidering the fact that plaintiff's actual past hospital and medical bills were $21,001.08, reduced the latter figure to $25,000. At the same time, the trial court held that the award for general damages was not excessive. Penney claims that it was excessive and that a new trial should be granted pursuant to Rule 59.01(5), Rules of Civil Procedure.

■■ Many Minnesota cases have held that the primary responsibility for the reduction of excessive damages lies in the trial court, and that a trial court's ruling on this point will only be disturbed where a clear abuse of discretion is demonstrated. *Moteberg v. Johnson*, 297 Minn. 28, 210 N.W.2d 27 (1973); *McCormick v. Malecha*, 266 Minn. 33, 122 N.W.2d 446 (1963); *Carmody v. Aho*, 251 Minn. 19, 86 N.W.2d 692 (1957). Plaintiff's injuries in the present case were extremely painful, required 8 months of hospitalization, caused him loss of income, and disfigured him extensively. Accordingly, there was no abuse of discretion in refusing to reduce the general damages.

5. NSP established that plaintiff assumed the risk of injury resulting from a flash-over.[6] Plaintiff testified that he had seen flash-overs in the past, knew they were always a danger where energized equipment was involved, and knew he had a right to demand that the equipment be de-energized. He felt that a flash-over was "one of the hazards that a lineman has to accept."

Aside from the Worker's Compensation Act and its present application through the holding in *Lambertson v. Cincinnati Corp.*, 257 N.W.2d 679 (Minn.1977),[7] this assump-

---

agent, or employe of the adverse party he may be cross-examined, contradicted and impeached by any party to the action."

Rule 611(c), Rules of Evidence, was not in effect at the time of this trial. Voeltz was examined pursuant to Rule 43.02 as "an employe" of NSP.

**6.** See, 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II, 135 S, which states: "Assumption of risk is voluntarily placing (oneself) (one's property) in a position to chance known hazards. To find that a person assumed the risk you must find:
"1. That he had knowledge of the risk.
"2. That he appreciated the risk.
"3. That he had a choice to avoid the risk or chance it and voluntarily chose to chance it."

**7.** In *Lambertson v. Cincinnati Corp.*, 257 N.W.2d 679 (Minn.1977), it was held that a third party was entitled to contribution from a negligent employer in an amount not to exceed the compensation benefits paid or to be paid by the employer because of the injuries.

tion of risk would be an absolute bar to a suit by plaintiff against NSP since the accident happened prior to *Springrose v. Willmore, supra. Goblirsch v. Western Land Roller Co.*, Minn., 246 N.W.2d 687 (1976); *Hacker v. Berkner*, 263 Minn. 278, 117 N.W.2d 13 (1962); *Syverson v. Nelson*, 245 Minn. 63, 70 N.W.2d 880 (1955); *Palmer v. Wiltse*, 239 Minn. 130, 57 N.W.2d 812 (1953).

Penney argues, however, that because NSP's liability to plaintiff arises from the Worker's Compensation Act rather than a common-law tort theory, NSP should not be able to use plaintiff's assumption of risk as a defense to Penney's action for contribution. Lambertson was not the law at the time of this action and is therefore inapplicable, but in any event Lambertson should not be read as creating the possibility that an employer could be more liable to a third party for contribution than it would have been to its own employee in the absence of the Worker's Compensation Act.

The court erred in applying post-Springrose law to a pre-Springrose case. The question of NSP's negligence should not have been submitted to the jury at all, given its findings that plaintiff had assumed the risk. Thus, NSP should have been granted a directed verdict.

Since we hold that the trial court should not have applied *Springrose v. Willmore, supra*, and that *Lambertson v. Cincinnati Corp., supra*, did not apply, the order requiring NSP to pay contribution is reversed; in all other respects, the trial court is affirmed.

Affirmed in part, reversed in part, and remanded with instructions to enter judgment against Penney in the amount of $268,000.

SHERAN, C. J., and OTIS, J., took no part in the consideration or decision of this case.