James R. LEMMER, et al., Plaintiffs,

v.

IDS PROPERTIES, INC., defendant and third party plaintiff, Respondent, Appellant.

WACO SCAFFOLDING AND SHORING COMPANY, defendant and third party plaintiff, Respondent,

v.

TURNER CONSTRUCTION COMPANY, third party defendant, Appellant, Respondent.

Nos. 50327, 50463.

Supreme Court of Minnesota.

Oct. 24, 1980.

Rehearing Denied May 12, 1981.

Cousineau, McGuire, Shaughnessy & Anderson, Kathleen D. Drake, Minneapolis, for IDS Properties, Inc. in No. 50327.

Mahoney, Dougherty & Mahoney and Kenneth P. Gleason, Minneapolis, for Turner Construction Company.

Cousineau McGuire, Shaughnessy & Anderson and James L. Haigh, Minneapolis, for IDS Properties, Inc. in No. 50463.

Popham, Haik, Schnobrich, Kaufman & Doty and G. Marc Whitehead, Minneapolis, for Waco Scaffolding & Shoring Company.

Heard before OTIS, WAHL, and SCOTT, JJ., and considered and decided by the court en banc.

OTIS, Justice.

The plaintiff, James R. Lemmer, was injured while working in the IDS Center on September 11, 1972. In 1975 he and his wife, Irene G. Lemmer, sued IDS and Waco Scaffolding and Shoring Company, the owner and sub–contractor respectively. In

1977 IDS impleaded Turner Construction, the general construction manager on the project, for contribution and indemnity. Trial commenced on September 12, 1978.

At the conclusion of plaintiffs' case, Waco and IDS entered into a settlement with plaintiffs under which each defendant would pay $50,000 for a total of $100,000. Defendants Waco and IDS expressly agreed that the settlement was without prejudice to their claims against Turner and each other. The jury returned a verdict finding Lemmer 20% at fault, third–party defendant Turner 80% at fault, and exonerated Waco and IDS. The trial court ordered judgment for IDS and Waco of $50,000 each against Turner. Turner appeals from that judgment. (Case No. 50327).

The trial court also held that Waco was entitled to indemnity of $20,000 from IDS for attorneys fees under a provision of a delivery order signed by an agent of IDS. IDS appeals from that order. (Case No. 50463).

We affirm in part and reverse in part.

IDS Properties, Inc. hired Turner Construction Co. as the general project manager with duties similar to those of a general contractor. Under the contract Turner agreed that equipment, including scaffolding, "shall be provided by the Contractor or his Subcontractors who shall maintain them in good and safe mechanical working order, be responsible for their safe use, and remove them when no longer required." The contract also provides:

> The Contractor [Turner] shall be responsible to the Owner [IDS] for the acts and omissions of all his employees and all Subcontractors, their agents and employees and all other persons performing any of the Work under a contract with the Contractor.

The indemnity clause of the contract reads as follows:

> The Contractor [Turner] should ensure that the sub–contractor shall indemnify and hold harmless the Owner and Architects, [IDS] their agents and employees in a manner approved by the Owner.

Turner also assumed the duty to keep the premises safe during construction. The relevant contract provisions are as follows:

## ARTICLE 10

### PROTECTION OF PERSONS AND PROPERTY

**10.1 SAFETY PRECAUTIONS AND PROGRAMS**

10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.

**10.2 SAFETY OF PERSONS AND PROPERTY**

10.2.1 The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

> .1 all employees on the Work and all other persons who may be affected thereby;

\*    \*    \*    \*    \*    \*

10.2.6 The Contractor shall designate a responsible member of his organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated in writing by the Contractor to the Owner and the Architect.

The accident of September 11, 1972, occurred during the final phases of construction of the IDS Center. Lemmer and his co–worker, Howard Hartig, were clearing material out of lower level two where their employer, Commonwealth Electric Company, had temporarily stored it. Lemmer and Hartig took cart loads of equipment and material from the storage area to the elevators where other employees met them and completed the transfer of property to the fourth floor of the Marquette Inn Building. The average round trip took Lemmer and Hartig ten to twenty minutes to complete. When they returned to the elevators with a loaded cart on one of the trips, they discovered that some scaffolding had been moved into position which blocked their path.

They could not move it because the wheels were locked. While Lemmer was unlocking the wheels, the scaffolding collapsed and fell on him. Upon hearing of the accident, Beyer, as was his normal practice, investigated on behalf of Turner.

Equipment of various subcontractors had been stored on lower level two. Among the equipment was some scaffolding. In addition, on September 11, 1972, the day of the injury, Waco delivered scaffolding to IDS to be used for exterior window washing.

Shortly after the close of plaintiffs' case-in-chief both defendants settled with the plaintiffs. Some particulars of the settlement agreements are not altogether clear from the record, but the most important terms are undisputed. Plaintiffs were to receive $50,000 from each defendant, Waco and IDS, for a total of $100,000. Plaintiffs agreed to settle with Commonwealth's worker's compensation insurer so that Waco and IDS would not be liable for more than $50,000 each. Waco and IDS reserved their claims for indemnity or contribution against Turner, and Waco reserved its claims for indemnity against IDS, but in no event would it seek more than $50,000 from IDS. IDS also agreed that in the event Turner was liable to IDS, and Waco was liable to Turner, IDS would not pursue its claim and Waco's total liability would be limited to $50,000. Although the record does not explicitly indicate that the settlements were intended to release all defendants and potential defendants, the most reasonable and apparent interpretation of the record in the context of the parties in this case leads to the conclusion that all defendants were released by the plaintiffs. *Cf. Lametti v. Peter Lametti Constr. Co.*, 305 Minn. 72, 232 N.W.2d 435 (1970). The trial court ruled that the settlement was reasonable and prudent and that the evidence was such that the jury could find liability on any or all of the parties.

The case was submitted to the jury on a special verdict. The jury found that the scaffolding equipment which injured Lemmer was not the same scaffolding delivered by Waco to IDS. The evidence supports this determination because the wheels ordered by IDS and noted on the delivery order are different from those on the scaffolding which injured Lemmer, and because the Waco driver who delivered the scaffolding testified that after he delivered it, it was pushed down three levels over serrated surfaces, to a storage area on lower level three, not lower level two where the accident occurred.

The jury also found IDS not to be negligent, and found Lemmer 20% negligent. The trial court had ruled that Turner was the sole possessor of the property, and the jury found Turner 80% negligent. The negligence of other subcontractors and of Hartig, Lemmer's co-employee, were not submitted to the jury because submission of their negligence had not been requested by any party.

After post-trial motions, judgment was entered in favor of Waco and IDS requiring Turner to indemnify each of them for the $50,000 each had paid in settlement. Turner appeals claiming that the evidence does not support the jury finding that it was negligent and that the trial court erred in awarding Waco and IDS indemnity against it.

Judgment was also entered in favor of Waco against IDS for indemnity for attorneys fees under an agreement found to exist between Waco and IDS based on a clause in the delivery order signed by an agent of IDS. IDS appeals.

■ 1. The first issue raised is whether the evidence supports the jury's findings that Turner was negligent and 80% at fault for Lemmer's injury. Turner's contractual agreement with IDS is evidence of its duty to Lemmer. *Foster v. Herbison Constr. Co.*, 263 Minn. 63, 115 N.W.2d 915 (1962). In addition, Turner had duties as a possessor of land. *Thill v. Modern Erecting Co.*, 272 Minn. 217, 136 N.W.2d 677 (1965).

In its contract with IDS, Turner agreed to "take all reasonable precautions for the safety of, and [to] provide all reasonable protection to prevent damage, injury or loss to * * * all employees on the [job]."

Turner specifically agreed to appoint a person to be in charge of the prevention of accidents and agreed, "in order that the [job] will be completed with the greatest degree of safety, * * * to conform to all the provisions of the 'Manual of Accident Prevention in Construction' published by Associated General Contractors of America, Inc., latest edition."

In performing the contract Turner appointed Donald Beyer as safety director to monitor the activities of subcontractors to see that safe construction practices were followed. Beyer held safety meetings which representatives of subcontractors; posted safety posters; made periodic inspections of the site; and investigated accidents in order to prevent future similar occurrences. Beyer's only staff was a nurse and several people who handled safety communications.

IDS argues that Turner had a duty to do more in this instance, because Turner had knowledge of facts from which it should have anticipated the hazardous condition arising and thus should have taken steps to prevent an injury from occurring. Turner knew that subcontractors were storing equipment on lower level two; that the equipment was being moved to another floor; that scaffolding was in the area; and that improperly constructed scaffolding is hazardous. Despite this knowledge Turner did not take any action to inspect the area, post a safety officer there, caution the subcontractors or their employees about the increased danger, or do anything else in response to the situation.

Although a mere possessor of land would not have a duty to anticipate the danger in this case, cf. *Gaston v. Fazendin Constr. Inc.*, 262 N.W.2d 434 (Minn. 1978); *Peterson v. W. T. Rawleigh Co.*, 274 Minn. 495, 144 N.W.2d 555 (1966), where the general construction manager is the possessor of the property and has voluntarily, contractually undertaken the duty of taking precautions for the safe construction of the building, a greater degree of care is required. Whether the standard of care was met was a jury question which the jury decided against

Turner. We cannot say that there is insufficient evidence to support the jury's verdict.

■ 2. IDS and Waco were awarded indemnity from Turner. IDS sought indemnity primarily under the rule that a "joint tortfeasor may generally recover indemnity * * * [w]here the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged." *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 372-73, 104 N.W.2d 843, 848 (1960). Since Turner breached its contractual duty to IDS by not taking all reasonable safety precautions, IDS was entitled to indemnity from Turner for all liability occasioned by such breach. *Dehn v. S. Brand Coal & Oil Co.*, 241 Minn. 237, 63 N.W.2d 6 (1954). However, Turner argues that since IDS was found to be not negligent, IDS and Turner are not joint tortfeasors as required by the rule. This case is thus distinguishable from cases in which the one seeking indemnity has been found liable, e.g., *id.*, as well as cases in which one defendant has settled with the plaintiff and in a later suit for indemnity (1) proves or permissibly admits its own negligence, (2) proves the negligence of the third party, and (3) proves that its settlement was reasonable, e.g., *Minneapolis Mill Co. v. Wheeler*, 31 Minn. 121, 16 N.W. 698 (1883), cited with approval in *Altermatt v. Arlan's Department Stores*, 284 Minn. 537, 169 N.W.2d 231 (1969). *See also, Samuelson v. Chicago, R. I. & P. R. Co.*, 287 Minn. 264, 178 N.W.2d 620 (1970) (contribution); *Duluth, M. & N. Ry. Co. v. McCarthy*, 183 Minn. 414, 236 N.W. 766 (1931) (contribution).

We have recently considered the issue of whether defendants seeking contribution must be jointly liable with persons from whom they are seeking contribution. In *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), contribution was allowed where both parties were liable to the plaintiff, but where they were not joint tortfeasors. In that case we said:

While there is no common liability to the employee *in tort*, both the employer and

the third party are nonetheless liable to the employee for his injuries; the employer through the fixed no–fault workers' compensation system and the third party through the variable recovery available in a common law tort action. 312 Minn. at 128, 257 N.W.2d at 688 (emphasis in original).

In our recent opinion in *Conde v. City of Spring Lake Park*, 290 N.W.2d 164 (Minn. 1980), the issue of the continuing efficacy of the common liability rule was expressly raised in the context of the dram shop act. This court reaffirmed the requirement of common liability and denied a liquor vendor contribution against the allegedly intoxicated person. The denial was based both on the common liability rule and on the reasoning that the purposes of the statute would be thwarted by allowing contribution.

The primary rationale for the result in *Conde* is that the statutory purposes of the dram shop act would be thwarted by allowing contribution from the alleged intoxicated person, especially where that person's family members are the injured parties. There is no similar statutory constraint in this case.

In another recent case we refused to modify or eliminate the common liability requirement. *Hart v. Cessna Aircraft Co.*, 276 N.W.2d 166 (Minn.1979). In *Hart* the injured party originally sued one defendant, Vogt, who was found not negligent by the jury. The plaintiff then sued Cessna Aircraft Company which impleaded Vogt. We held that Cessna's liability would be limited to its negligence as determined by the jury with Vogt's negligence taken into account. However, Cessna was not allowed contribution since Vogt had been found not liable in the prior action. 276 N.W.2d at 168–69.

In *Hart v. Cessna Aircraft Co.* the party from whom contribution was sought had previously been adjudicated not negligent. In this case the parties seeking contribution, indemnity, or restitution (not the parties against whom contribution is sought) first entered into a reasonable and prudent settlement and then were found not negligent.

Waco and IDS settled their potential exposure to liability at a time when it was clear that the jury could have found them liable and damages could have been well in excess of the amount of the settlement. Thus Waco and IDS were not officious intermeddlers, were not buying a claim to serve an advantage over Turner, and were not volunteers. One who settles with an injured party a claim which eventually proves to be ill founded, is not necessarily a volunteer. *Lametti v. Peter Lametti Constr. Co.*, 305 Minn. 72, 77, 232 N.W.2d 435, 439 (1975); *Samuelson v. Chicago, R. I. & P. R. Co.*, 287 Minn. 264, 178 N.W.2d 620 (1970). *Accord Alamida v. Wilson*, 53 Haw. 398, 495 P.2d 585 (1972); *Kennedy–Ingalls Corp. v. Meissner*, 5 Wis.2d 100, 92 N.W.2d 247 (1958); *Restatement of Restitution* § 71.

We hold that IDS having entered into a reasonable and prudent settlement need not prove common liability and having met the other requirements for indemnity is entitled to recover from Turner. Our holding is in accord with the principle that parties who settle litigation are favored in the law, *Esser v. Brophey*, 212 Minn. 194, 3 N.W.2d 3 (1942), and that "each tortfeasor accept responsibility for damages commensurate with its own relative culpability," *Farmington Plumbing and Heating Co. v. Fischer Sand and Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn.1979).

■ 3. Waco was not a party to the contract with Turner and thus cannot recover from Turner under the same theory as IDS. The issue is whether Waco could have recovered against Turner if there had been common liability. Our opinion of a decade ago, *Samuelson v. Chicago, R. I. & Pac. R. R. Co.*, 287 Minn. 264, 178 N.W.2d 620 (1970) provides the applicable rule. In *Samuelson* we stated:

A right to contribution or indemnity between tortfeasors normally arises in favor of a defendant who, not acting as a volunteer enters into a reasonable settlement with the plaintiff, the result of which is to release the other defendants.

A case for recovery of indemnity will be established where it is subsequently shown that the tortfeasor joined in the action by the compromising defendant is solely liable for the injury, while a case for recovery of contribution will be established where it is shown that such liability is shared by the parties defendant. * * * If it could have been shown that appellant was solely responsible for the accident, we see no reason why Rock Island should not have been entitled to full restitution.

* * * To allow appellant, who might have been found solely liable for the accident, to avoid contribution on the ground that Rock Island's liability has not been adjudicated would, as we have noted, unjustly enrich appellant, a result which the remedy of restitution upon a claim of either contribution or indemnity was intended to prevent.

*Samuelson* at 268–70, 178 N.W.2d at 624.

Here Turner, the tortfeasor who was joined in the action by IDS and Waco, the compromising defendant[s], was solely liable for the injury and Waco, is therefore, entitled to indemnity.

■ 4. Having held that both Waco and IDS can recover from Turner, the problem of the amount arises. Turner argues that only 80% of the $100,000 settlement is proper because it was only 80% at fault. Neither Turner nor Waco nor IDS requested that the jury determine the amount of damages, once the settlement had been reached. Therefore, the court, by ruling that the settlement was reasonable and prudent accepted the $100,000 figure as proper and Turner waived its right under Minn.R.Civ. Pro. 49.01 to have the jury decide whether the $100,000 reflected all or only 80% of the damages.

■ 5. Turner also argues that it was prejudiced by the admission of hearsay testimony relating to the ownership of the scaffolding. Although Turner's objection should have been sustained, the error was harmless. Turner was directly and not merely vicariously liable, and, therefore, actual ownership of the scaffolding did not affect the result.

We have considered other grounds for reversal raised by appellant, but do not find they merit extended discussion. Appeal No. 50327 is affirmed.

■ 6. IDS as appellant disputes Waco's right to indemnity for attorneys fees awarded by the trial court based on a hold harmless clause contained in Waco's delivery order. The trial court held IDS liable for Waco's attorneys fees because IDS had refused Waco's tender of defense. The issue is whether under the uniform commercial code the hold harmless clause was part of the contract.

The formal requirements for creating a contract under the uniform commercial code are minimal. In general, "[a] contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Minn.Stat. § 336.2–204(1) (1978); U.C.C. § 2–204(1).

The record establishes that an oral contract was formed before the scaffolding was delivered. On September 7, 1972, Waco sent IDS a quote for scaffolding to be used in washing exterior windows. Within the next few days, probably on September 10 or 11, 1972, IDS and Waco orally agreed that IDS would purchase the scaffolding as quoted and that Waco would deliver it as soon as possible. In order to facilitate prompt delivery, IDS phoned Waco and gave it IDS's purchase order number for delivery and billing purposes. This number was written on the delivery order Waco sent with the scaffolding which was delivered on either September 11 or 12, 1972.

The parties do not seriously contest the existence of an oral contract entered prior to delivery of the goods. Under such conditions the delivery order is a written confirmation of the contract which contains additional terms under Minn.Stat. § 336.2–207(1) (1978). Under § 2–207(2) such additional terms are construed as proposals for additions to the contract. Where the transaction is not between merchants the propos-

als do not become a part of the contract unless they are agreed to by the affected party. IDS is not a merchant of scaffolding. There is no evidence that it deals in scaffolding or it claims to have any special knowledge or skill in scaffolding transactions, or that it was acting through an agent which qualify as a merchant. Minn. Stat. § 336.2–104(1) (1978); U.C.C. § 2–104(1).

Waco asserts that IDS agreed to the proposed changes when James Baer, IDS's building superintendent, signed the delivery order. IDS argues and the record shows there is no evidence that James Baer had actual authority to enter into purchase agreements or indemnity clauses on behalf of IDS. Baer was the building superintendent and was responsible for signing receipts for goods ordered by IDS and delivered to the IDS loading dock. He did not negotiate purchases, sign purchase orders or otherwise contract on behalf of IDS.

The only evidence relating to Baer's apparent authority was his position as building superintendent. We have held that:

> An agent's apparent authority results from statements, conduct, lack of ordinary care, or other manifestations of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority.

*McGee v. Breezy Point Estates*, 283 Minn. 10, 22, 166 N.W.2d 81, 89 (1969), *quoted with approval* in *Duluth Herald and News Trib. v. Plymouth Optical Co.*, 286 Minn. 495, 499, 176 N.W.2d 552, 555 (1970). Here Waco had negotiated with IDS purchasing agents and with Richard Hanson who was IDS's director of operations and was in charge of the IDS building project. Since Baer had not been in contact with Waco, Waco had no basis for believing he had authority to consent to proposals for additions to the contract. Although he had greater authority than the custodian who signed a delivery order for scaffolding in *Miller v. Macalester College*, 262 Minn. 418, 432–33, 115 N.W.2d 666, 675 (1962), the cases are analogous. In *Miller* a teacher with authority to do so ordered scaffolding from Waco. It was delivered to the school and a custodian signed the delivery order containing the indemnity clause. We noted that "[h]ad this defendant wished to make such a contract effective, it is obvious that his first duty would be to procure its execution by an authorized agent of the college." *Id.* at 432, 115 N.W.2d at 675. In the instant case Waco did not negotiate the hold harmless provision with the IDS personnel who make purchasing decisions and negotiate contracts. Instead, Waco sent to IDS's receiving dock a delivery order which doubled as a contract. One who proposes additions to a prior oral contract has a duty to convey those proposals to the personnel responsible for entering the oral agreement.

The result we reach is in accord with the ordinary expectations and practices in business dealings. IDS testified that it signs for every item it receives. Waco testified that it would not deliver without a signed acknowledgment of delivery. IDS was entitled to treat the document, labeled by Waco as a "delivery order", as just such an acknowledgment and no more. As in *Miller*, the indemnity clause was not a negotiated provision and was not called to the attention of Baer or any IDS executive. Under these circumstances we hold that signing the delivery order merely acknowledged receipt of the goods.

The award of Waco's attorneys fees against IDS in Appeal No. 50463 is, therefore, reversed.

AMDAHL and SIMONETT, JJ., not having been members of this court at the time of argument and submission, took no part in the consideration or decision of this case.