WILLIAM ARTHUR SIMMEL, AN INFANT BY WILLIAM
HERMAN SIMMEL, HIS GUARDIAN *AD LITEM*, AND
WILLIAM HERMAN SIMMEL, INDIVIDUALLY, PLAIN-
TIFFS-RESPONDENTS, AND WILLIAM HERMAN SIM-
MEL, INDIVIDUALLY, CROSS-APPELLANT, v. NEW JER-
SEY COOP COMPANY, A CORPORATION OF THE STATE
OF NEW JERSEY, DEFENDANT-APPELLANT, CROSS-
RESPONDENT.

Argued June 3, 1958—Decided June 27, 1958.

(1)

2

*Mr. Edward V. Ryan* argued the cause for the defendant-appellant and cross-respondent.

*Mr. Jesse Moskowitz* argued the cause for the plaintiffs-respondents and for the cross-appellant.

The opinion of the court was delivered by

BURLING, J. This is an action commenced in the Superior Court, Law Division, to recover damages for personal injury resulting from the alleged negligent maintenance of a dangerous condition upon defendant's premises. The defendant denied maintenance of the condition, asserting as a defense that the condition was created by third persons without defendant's consent or knowledge. The jury returned a verdict in the amount of $20,000 in favor of the infant plaintiff, William Arthur Simmel, and in favor of the plaintiff father, William Herman Simmel, in the amount of $7,500. The defendant, New Jersey Coop Company, appealed to the Superior Court, Appellate Division. That court affirmed the verdict in favor of the infant plaintiff and reduced the verdict in favor of his father from $7,500 to $1,602.30, the latter representing the amount of proven medical expenses. 47 *N. J. Super.* 509 (1957).

Thereafter the defendant's petition for certification and the plaintiff father's cross-petition for certification were granted by this court. 26 *N. J.* 168 (1958).

On December 13, 1954 the infant plaintiff, then four years of age, wandered onto an unenclosed vacant lot on the corner of Sixth and Jackson Streets, in the City of Hoboken, New Jersey. He stumbled on some junk which was on fire on the premises and was burned. The plaintiffs resided in a large housing project located across the street from the lot which contained an estimated 700 families and 1,000 children.

The defendant, the owner of the lot, is engaged in the business of assembling and renting chicken coops. The defendant

had closed title to the lot on November 22, 1954 and was engaged in the process of relocating its business from its old premises, several blocks away, to a building adjacent to the site in question on the date the injury occurred. The defendant did not actually commence operations at its new location until some 13 days after the event.

There was testimony that the vacant lot had been used as a dump for rubbish and debris for some time prior to December 13, 1954 and that its potential dangers were recognized by the residents of the neighborhood. It was said that men working in dump trucks of the Department of Public Works of Hoboken deposited rubbish and debris on the premises "every day." There was further testimony that there were fires on the premises "every day" or "practically every day" and that children were constantly playing there or cutting across the lot on their way to school. The fires were sometimes started by the men who dumped the rubbish onto the lot and sometimes by children. It was stipulated at the trial that:

"* * * there is no contention that the fire which was involved here was set by the defendant or any of its employees, agents or servants."

The defendant's motions for dismissal at the end of the plaintiffs' case and at the conclusion of the entire case were denied. Defendant's motion for a new trial was also denied.

Liability for negligent injury to infant trespassers is relatively new in this State. The rule imposing such liability, which has alternately been denominated as the turntable, playground or attractive nuisance doctrine, was early enunciated in this country in 1873 in the case of *Sioux City & Pacific Railroad Co. v. Stout*, 17 *Wall* 657, 21 *L. Ed.* 745 (*U. S.* 1873). For history and subsequent development see *e. g., Green, "Landowner v. Intruder; Intruder v. Landowner,"* 21 *Mich. L. Rev.* 495 (1923) ; *Hudson, "The Turntable Cases in the Federal Courts,"* 36 *Harv. L. Rev.* 826 (1923) ; *Green, "Landowner's Responsibility to Children,"* 27 *Tex. L. Rev.* 1 (1948) ; *James, "Tort Liability of Oc-*

cupiers of Land I; Duties Owed to Trespassers," 63 Yale L. J. 144 (1953).

The concept took some 50 years to percolate through American jurisprudence, but by 1923 it was recognized in various forms in 27 states. Green, supra, 21 Mich. L. Rev. 495, at pp. 505, 506. Its incorporation (and refinement) in the Restatement of Torts (§ 339) in 1934 expedited its recognition. See Prosser on Torts (2d ed. 1955), p. 440.

For many years the courts of this State declared that a landowner or occupier owed no duty to exercise reasonable care towards infants who broke the close; that the sole duty, as in the case of adults, was to refrain from willfully injuring or trapping the infant. Vanderbeck v. Hendry, 34 N. J. L. 467 (Sup. Ct. 1871); Turess v. N. Y. Susq. & West. R. R. Co., 61 N. J. L. 314 (Sup. Ct. 1898); Fitzpatrick v. Cumberland Glass Mfg. Co., 61 N. J. L. 378 (Sup. Ct. 1898); Delaware, L. & W. R. R. Co. v. Reich, 61 N. J. L. 635 (E. & A. 1898); Friedman v. Snare & Triest Co., 71 N. J. L. 605 (E. & A. 1905); Tarlucki v. West Jersey, etc., R. R. Co., 80 N. J. L. 688 (Sup. Ct. 1910); Kaproli v. Central R. R. of N. J., 105 N. J. L. 225 (E. & A. 1928); Harrington v. Greidanus, 10 N. J. Misc. 710 (Sup. Ct. 1932) and see Note, "The Attractive Nuisance Doctrine—Its Status in New Jersey," 8 Rutgers L. Rev. 378 (1954). But cf. Guinn v. Del. & Atl. Telephone Co., 72 N. J. L. 276 (E. & A. 1905). Under the pressure of persistently recurrent fact patterns of infant trespasser injury, the rule gave rise to the exception in extreme cases.

"Although the modern inclinations of teenagers and adults have become somewhat unpredictable, the natural propensities of children of tender years continue to be reasonably foreseeable. Their instincts have been too repeatedly observed over the ages to elude common knowledge. Their responsiveness to allurement has existed before the day of the Trojan horse; their proclivity to climb is old enough to have been a contributive factor to the conception of the Darwinian theory; and, as Lord Sumner put it, they are little barbarians who in the wantonness of infancy are prone to trespass." (Jayne, J., in Diglio v. Jersey Central Power & Light Co., 39 N. J. Super. 140, at page 141 (App. Div. 1956)).

Thus, in *Piraccini v. Director General of Railroads*, 95 *N. J. L.* 114 (*E. & A.* 1920) an infant, five years of age, was found "all in flames" on defendant's property. The property had been used as a playground by the children and children had constantly crossed it on their way to school. The fire on the premises had been set by defendant's employee in obedience to orders to clear the land of dry leaves. The Court of Errors and Appeals upheld liability. Mr. Justice Swayze speaking for the court declared:

"* * * Their liability grows out of their responsibility for a dangerous agency.

* * * * * * * *

Starting with the legal liability for negligence in the case of highly dangerous acts as defined by Chief Justice Beasley for the major premise, the question is whether setting fire to dry grass in a populous town near a pathway and playground frequented by school children may be such an act.

The answer is not doubtful. Always and everywhere since the beginning of civilization with man's discovery of the means of producing fire, it has been regarded as a dangerous as well as a beneficent agency, to be handled with care." (95 *N. J. L.*, at *page* 115).

The dangerous agency rule was again followed in *Spenzierato v. Our Lady Monte, etc., E. Orange*, 112 *N. J. L.* 93 (*E. & A.* 1933), where the infant plaintiff found a firecracker which exploded in his hand on defendant's premises.

The exception itself became the rule (but with a new dimension and direction) when in *Strang v. South Jersey Broadcasting Co.*, 9 *N. J.* 38 (1952), Mr. Justice Heher, after discussing the previous cases, declared for the court:

"* * * These exceptions at common law to the general rule of nonliability to trespassers proceed from humanitarian considerations and reasons of social policy. Parents cannot be with their children always. The doctrine represents a prudent and essential accommodation of the landowner's right to the use of his land and society's interest in the humane and the protection of the life and limb of its youth and the individual's interest in personal security. The correlative burden on the landowner, small in comparison to the larger interests to be served, is a necessary concession to the common welfare. Or, as it is put in the *Restatement*, the inquiry is whether the utility to the possessor of maintaining the

condition is slight as compared with the risk to the children involved. Human safety is of far greater concern than unrestricted freedom in the use of land. *Restatement of Torts, section* 339. *Vide Prosser on Torts,* 613, 624; 21 *Michigan Law Review,* 495. The particular relation gives rise to a legal duty commensurate with the demands of reasonable foresight for harm." (Pages 45, 46.)

Since *Strang* the rationale of the *Restatment of Torts,* § 339 has taken firm roots in our jurisprudence. The cases arranged chronologically are: *Harris v. Mentes-Williams Co., Inc.,* 11 *N. J.* 559 (1953); *Hoff v. Natural Products Refining Co.,* 38 *N. J. Super.* 222 (*App. Div.* 1955); *Diglio v. Jersey Central Power & Light Co.,* 39 *N. J. Super.* 140 (*App. Div.* 1956); *Wytupeck v. Camden,* 25 *N. J.* 450 (1957). A case analogous to the instant one was decided by the Appellate Division after its decision in this case and was not further appealed. *Lorusso v. DeCarlo,* 48 *N. J. Super.* 112 (*App. Div.* 1957). And see *McGill v. United States,* 200 *F.* 2d 873 (3 *Cir.* 1953) reversing 105 *F. Supp.* 719 (*D. C. E. D. Pa.* 1952). *Cf. Terranella v. Union Bldg. and Construction Co.,* 3 *N. J.* 443 (1950); *Cole v. Thompson,* 27 *N. J. Super.* 561 (*App. Div.* 1953), certification denied 14 *N. J.* 465 (1954); *Taylor v. N. J. Highway Authority,* 22 *N. J.* 454 (1956); *Imre v. Riegel Paper Co.,* 24 *N. J.* 438 (1957).

The duty owing by the owner or occupier of land to infant trespassers to use reasonable care under the circumstances of the case, *Harris v. Mentes-Williams Co., Inc., supra, cf. Taylor v. N. J. Highway Authority, supra,* is triggered by the foreseeability of the presence of the intruder, *Restatement, Torts,* § 339(a), and the foreseeability of an unreasonable risk of harm, *Restatement, Torts,* § 339(b). No inflexible rule can be set forth concerning the prophylactic measures which must be taken in a particular case. "The measure of duty is care in proportion to the foreseeable risk." *Strang v. South Jersey Broadcasting Co., supra,* 9 *N. J.* at *p.* 45. And, except in the clearest case, the determination of the question of whether reasonable care was exercised is for the jury.

The defendant contends that the imposition of liability under the facts in the present case goes beyond both the intendment of *section* 339 of the *Restatement of Torts* and cases in this jurisdiction which have embraced that rule. The previous cases are distinguished on the ground that in each instance the defendant himself (actually or in legal contemplation) created the condition which caused the injury, but here the condition was caused by unknown third persons unrelated to the defendant. It is asserted that under these circumstances no duty of reasonable care arises, citing *Botticelli v. Winters,* 125 *Conn.* 537, 7 *A.* 2d 443 (*Sup. Ct. Err.* 1939); *Gallagher v. Frederick,* 366 *Pa.* 450, 77 *A.* 2d 427 (*Sup. Ct.* 1951).

█ We cannot agree. If an artificial condition exists upon the land, of which the landowner or occupier has knowledge, and which reasonable men may recognize as having propensities for causing an unreasonable risk of harm to infant trespassers, then it makes no difference whether the condition was created by third persons or by the defendant himself. Accord: *Roman v. City of Leavenworth,* 90 *Kan.* 379, 133 *P.* 551 (*Sup. Ct.* 1913); *Couer D'Alene Lumber Co. v. Thompson,* 215 *F.* 8 (9 *Cir.* 1914); *Foster v. Lusk,* 129 *Ark.* 1, 194 *S. W.* 855 (*Sup. Ct.* 1917); *Smith v. Otto Hendrickson Post 212, American Legion,* 241 *Minn.* 46, 62 *N. W.* 2d 354 (*Sup. Ct.* 1954); *Dehn v. S. Brand Coal & Oil Co.,* 241 *Minn.* 237, 63 *N. W.* 2d 6 (*Sup. Ct.* 1954); 65 *C. J. S. Negligence* § 29(7). *Cf. Spenzierata v. Our Lady Monte, etc., E. Orange, supra; Kahn v. James Burton Company,* 5 *Ill.* 2d 614, 126 *N. E.* 2d 836 (*Sup. Ct.* 1956); 10 *S. W. L. J.* 207 (1956); 1 *Vill. L. Rev.* 181 (1956); 34 *Tex. L. Rev.* 667 (1956); 35 *Neb. L. Rev.* 131 (1955).

█ We are not persuaded otherwise by the result reached in *Gallagher, supra,* that the word "maintain" as utilized in the *Restatement of Torts,* § 339, does not relate to artificial conditions on land which are created by third persons who are trespassers. Among the standard definitions of the word "maintain" the following are found: "To continue or pre-

serve in or with"; "To hold or keep in any particular state or condition, esp. in a state of efficiency or validity"; *Webster's New International Dictionary (2d ed.) Unabridged* (1947). The word is sufficiently broad in meaning to encompass the landowner's or occupier's toleration or sufferance of or acquiescence in a continued course of conduct by third persons in dumping rubbish and debris on the premises and the subsequent setting afire of it. In any event, the result reached should not rest upon the nuance of a word utilized in the *Restatement*, but upon the underlying rationale of the *Restatement*.

 It should be recognized, however, that the landowner or occupier is not an insurer of the infant. He has no duty to periodically inspect the premises in order to ascertain whether third persons, themselves trespassers, might have created dangerous artificial conditions thereon. *Cf. Couer D'Alene Lumber Co. v. Thompson, supra; Smith v. Otto Hendrickson Post 212, American Legion, supra;* 65 *C. J. S. Negligence* § 29(7). The maintenance here is alleged to consist of toleration or sufferance of, or acquiescence in, the acts of others, but before the defendant can be said to have so endured the others' conduct, he must have actual knowledge of the condition created by third persons unrelated to him. Actual knowledge of the dangerous conditions would especially be a *sine qua non* to liability in the instant case, where complete possession was not had until some two weeks after the accident and where only 21 days had elapsed between the date of closing of title and the event.

Since it is admitted that the dangerous condition was not created by the defendant, there is no necessity to determine whether the landowner or occupier has a duty to inspect the premises where he himself has created such condition. Compare *Restatement, Torts,* § 339(a) and (b) (and definition of "should know" in §§ 12, 334 *comment* (b)) ; *James, supra,* 63 *Yale L. J.* 144, 157, at *n.* 75 (1953) ; 2 *Harper and James, Law of Torts, pp.* 1458–1459 (1956), with *Prosser, supra, p.* 445, at *n.* 89; *Eldredge, "Tort Liability to Trespassers,"* 12 *Temp. L. Q.* 32, 51–52 (1937).

■ Once actual knowledge by the defendant of the condition created by the third persons is proven, the issues then are whether the defendant (a) should have foreseen that such condition would create an unreasonable risk of harm, and (b) whether the defendant should have foreseen the presence of infant intruders. In the instant case, both of those questions were clearly for the jury.

■ Under the ancient law the dangerous propensities of fire gave rise to the strictest accountability in the event it got out of hand. See *Piraccini v. Director General of Railroads, supra; Wigmore, "Responsibility for Tortious Acts: Its History,"* 7 *Harv. L. Rev.* 315, 448 (1893) ; *Winfield, "The Myth of Absolute Liability,"* 42 *L. Q. Rev.* 37, 46 (1923); *Annotation,* 24 *A. L. R. 2d* 246, 252 (1952). The case law is replete with evidence of the magnetic attraction of fire to children with its attendant dangers, see *Piraccini, Strang, Cole* cases, all *supra; Annotation "Attractive Nuisance-Fire,"* 27 *A. L. R. 2d* 1188 (1953), and the common experience of mankind readily supplies the knowledge.

Application of the enunciated principles to the instant case results in the necessity of a reversal of the judgment below and the ordering of a new trial.

It should first be noted that the facts in the instant case are sufficient to present a jury question of actual knowledge by the defendant of the premises' use as a dump and the continual fires. The defendant's officer admitted inspecting the premises some time prior to the closing agreement. While the officer denied seeing any such conditions on the premises, the jury might have found from the plaintiff's evidence that the condition of a dump with continual fires was in existence at the time of the inspection and that the officer's denial of having seen the condition was not credible.

But with respect to the requirement of knowledge of the condition of the premises the trial court charged the jury in part as follows:

"* * * Where one who has control and ownership of property, as here, permits others to create a condition on his land, that falls within the principle that I have stated to you, and for an un-

reasonable long period of time, permits it to remain there without his doing anything about it, he becomes the maintainer of the condition in his own right.

You also have in the statement of principle, the words 'knows' or 'should know,' for example, that children are likely to trespass.

Well, all the testimony in the case that bears on the condition of things existing at this place for a time anterior to the burning here, comes into effect. And what you are to ask yourself and to determine is what those conditions were. What those conditions were with respect to the length of time that it was permitted to go on. And ask yourself if, under those circumstances how it is to be determined that the possessor knew or should have known, that is a question that you and you alone can answer.

\* \* \* \* \* \* \* \*

Now, a crucial factor in the case with respect to this matter of determining knowledge, actual or imputed is that which has to do with the length of time that the defendant is shown to have had ownership and control of the premises in question. I believe that from the day the title was passed, as I remember it, to the day that the boy suffered his injury presents an interlude of twenty one days or three weeks. As I recall the proofs that interval of time is qualified by testimony of the defendant which has to do with stages of their moving and transferring their work and enterprise from one place to the other. All of that testimony, as I have stated to you, is crucial to the question of imputing knowledge by lapse of time to this defendant."

Thus it is apparent that the trial court did not limit the issue for determination by the jury to actual knowledge of the dangerous condition of the premises and the maintenance thereof as defined herein. The imputation of knowledge from the mere lapse of 21 days must have been premised upon an assumed duty to inspect the premises as to artificial conditions created by third persons which in this case did not exist.

■ Defendant made an omnibus objection to the charge. Reading the objection in light of the colloquies at the conclusion of the plaintiffs' case and the conclusion of the entire case, it may be fairly understood to comprehend specific objection that the charge should have been limited to the question of actual knowledge.

To the extent that the trial court's charge went beyond actual knowledge of the dangerous conditions it is erroneous and, since we have no way of telling whether the jury's

verdict is predicated upon a finding of actual knowledge or "imputed" knowledge, a new trial will be ordered.

Since a new trial is required we will proceed to determine several other points of controversy between the parties. The defendant asserts that the trial court erred in permitting testimony concerning conditions of the premises prior to defendant's ownership. As previously indicated, the defendant's officer admitted inspecting the premises during the course of negotiations for the property and prior to closing agreement. We are therefore of the view that the plaintiffs may properly introduce evidence concerning the condition of the premises from the time of such inspection. The essential inquiry concerns the defendant's knowledge of the fact that fires were being set on the lot. If it in fact had knowledge of the dangerous condition of the property prior to the closing, the duty to exercise reasonable care would arise on the date it acquired title.

Further, although no exception was made to the charge in this respect, assuming the duty of care to be existent, the trial court neglected to charge that the duty imposed upon the defendant is to exercise reasonable care under the circumstances of the case and further that the failure of performance of the duty in that respect must be the proximate cause of the resultant injury. Both of these charges are essential in order to afford a complete picture of the legal principles involved so that the jury may properly discharge its duties as the trier of the facts.

The last issue is whether the Appellate Division erred in reducing the amount of the verdict in favor of the plaintiff father to the actual medical expenses. The amount excised represented the recovery for the loss of future services of the infant. The case authorities and commentators readily admit that damages resulting from the loss of future services to the parents of an injured child are somewhat speculative. See *e. g., Graham v. Consolidated Traction Co.,* 64 *N. J. L.* 10 (*Sup. Ct.* 1899) ; *Fabiano v. Berckes,* 1 *N. J. Misc.* 406 (*Sup. Ct.* 1923) ; *Alisauskas v. Itro,* 9 *N. J. Misc.* 1057 (*Sup. Ct.* 1931) ; *Mathias v. Luke,* 37 *N. J. Super.* 241

(*App. Div.* 1955); *Jackiewicz v. United Illuminating Co.*, 106 *Conn.* 310, 138 *A.* 151, 152 (*Sup. Ct. Err.* 1927); *Campbell v. City of Philadelphia*, 252 *Pa.* 387, 97 *A.* 456 (*Sup. Ct.* 1916); *Prosser, supra, p.* 700, at *n.* 24; *Harper and James, supra, p.* 1317. This is because of the inherent difficulties of proof. As stated in *Jackiewicz v. United Illuminating Co., supra,*

"* * * It is uncertain what part of this period he will live, or what his condition of health will be during such period. It cannot be told what character, competency, and capacity or personality he may develop, or what field of usefulness he may be fitted for, or what his earnings will be. To procure evidence of the future earning capacity of a child of tender years, would, in most cases, be impossible, and result in the denial of a recovery by a parent for such loss." (138 *A.,* at *page* 152.)

Nonetheless, justice requires that the uncertainties inherent in the problem should not forestall a recovery from the wrongdoer who caused the injury. See *Restatement, Torts,* § 912, *comment* (a). We are in agreement with and adopt the standard set forth in the Appellate Division opinion that:

"* * * Clearly the trial judge should not send the issue to the jury merely because the child has suffered a permanent injury. However, where because of the permanent injury, the judge is of the view that reasonable men could find that probably there will be some resultant loss of services, then even in the absence of proofs showing the nature of the services lost or the extent of that loss and indeed in the absence of testimony that there probably would be some loss, he must submit the issue to the jury. The jury are allowed to rely upon common experience. Of course, their verdict is subject to the control of the court on a motion for a new trial or on appeal, pursuant to the general rules, *R. R.* 4:61–1, 1:5–3(a)." (47 *N. J. Super.,* at *page* 518.)

We disagree in the application of the formula to the facts in the present case.

The infant plaintiff suffered severe second and third degree burns from the upper third of the left thigh "going down and involving the entire foot."

The majority of the burns were third degree, affecting tissue deep beneath the skin and which necessitated a skin

grafting. The leg is badly scarred and the scar tissue does not have the same resiliency as in normal skin—if traumatized it bruises and bleeds easily. As a consequence the infant plaintiff cannot engage in swimming or other exercise or physical endeavors which would require exposure of the leg. The injury further resulted in a ½-inch shortening of the leg. The infant's mother testified in part as follows:

"Well, if I want to take him out shopping, I can't walk a great distance with him because he complains his leg is tired. And at night I have to massage the back of the leg. It seems that the muscle tightens up. And he twitches in bed at night with the leg. When his body is relaxed, the leg twitches."

In our view reasonable men could find, from the evidence relating to the curtailing effect of the infant's injuries upon normal physical activities, that probably there will be some resultant loss of future services.

Since the disposition of this case requires a new trial, consideration of the amount of the verdict is inappropriate.

The judgment appealed from is reversed and the cause is remanded for a new trial. The cross-appeal becomes moot.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, FRANCIS and PROCTOR—5.

*For affirmance*—Justice WACHENFELD—1.