683 A.2d 845

SAMUEL VEGA, AN INFANT BY HIS GUARDIAN AD LITEM, MIGDALIA MUNIZ, AND MIGDALIA MUNIZ, PLAINTIFFS–APPELLANTS, v. ROBERT PIEDILATO, BRUCE PUFF AND WAYNE PUFF, DEFENDANTS–RESPONDENTS, AND CITY OF PERTH AMBOY; HOUSING AUTHORITY, COUNTY OF MIDDLESEX; HOUSING AND COMMUNITY DEVELOPMENT, STATE OF NEW JERSEY, AND COMMUNITY AFFAIRS DEPARTMENT, DIVISION OF HOUSING, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 24, 1996—Decided October 31, 1996.

Before Judges HAVEY, BROCHIN and KESTIN.

*Eugene A. Cross* argued the cause for appellants (*Ramp & Renaud,* attorneys; *Ann L. Renaud,* on the brief).

*Thomas D. Monte, Jr.,* argued the cause for respondent Robert Piedilato (*Monte & Marriott, P.C.,* attorneys; *Mr. Monte,* of counsel; *Frank E. Borowsky, Jr.,* on the brief).

*William C. Carey* argued the cause for respondents Bruce and Wayne Puff (*McElroy, Deutsch & Mulvaney,* attorneys; *Mr. Carey* and *John T. Coyne,* on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

This personal injury action involves the application of the infant–trespasser rule under the *Restatement (Second) of Torts* § 339 (1963) and (1964) (*Restatement*). Plaintiffs appeal from a summary judgment dismissing their complaint in favor of defendants Robert Piedilato and Bruce and Wayne Puff. While trespassing on Mischief Night, fourteen–year old plaintiff, Samuel Vega, fell into an air/light shaft between two three–story apartment buildings owned by defendants. In granting summary judgment, the motion judge concluded that the air/light shaft did not pose an "unreasonable risk" because it was an "obvious" danger. Concluding that the fall was an "act of youthful recklessness and bravado" on Samuel's part, the judge found that plaintiffs failed to satisfy clauses (b) and (c) of § 339. We agree and affirm.

Defendants owned two contiguous multiple–family dwellings on State Street in Perth Amboy; Piedilato owned number 685, and the Puffs owned number 687. Both buildings are three stories, approximately forty–feet high at their respective rooftops. The roofs are relatively flat, pitched only for drainage. The structures

abut at the front and rear of the buildings, but an air/light shaft separates them in the middle of the common property line. The air/light shaft is irregular in shape and approximately fifteen–feet long. At its greatest width, the air shaft is approximately fifteen feet across. A twenty–inch high parapet surrounds the air/light shaft on 687 State Street; there is no parapet on the 685 State Street side of the shaft.

Samuel was nearly fifteen years old on the evening of October 30, 1991, "Mischief Night." He and two friends, Manuel Rodriguez and Jose Rodriguez, decided to throw tomatoes and eggs at cars from the roof of the Puff building (# 687), in which Manuel lived. Vandals had damaged the locking mechanism on the entrance to the Piedilato building (# 685), enabling the boys to enter it without difficulty. They gained access to the Piedilato roof via a missing roof-hatch door, breaking through a plastic bag which covered the opening. Once on the roof of the Piedilato building, they simply stepped onto the Puff building. After the boys ran out of eggs and tomatoes they left the roof to retrieve more. They returned to the roofs and were joined by another friend, Omar Pichardo. Omar left before the accident happened.

All of the boys, including Samuel, had crossed back and forth between the two roofs several times during the evening. Manuel stated that they crossed at the front and rear of the air/light shaft in order to avoid it.

Plaintiffs' expert, Joseph Triano, when asked whether the air/light shaft would have been observable to Samuel, testified "I can only presume that since they entered the roof at 685 and went to the roof of 687 that the air shaft is very obvious and that they would know that it was there." Plaintiffs' other expert, Herbert Feist, described the air/light shaft as "fairly substantial."

After being on the Puff roof for approximately three hours, Manuel spotted a police car and yelled to Samuel and Jose that the police were coming. They all ran to escape. According to Manuel, in order to avoid being seen from the rear of the building,

he and Samuel decided to jump over the air/light shaft near the middle of the roofs. Manuel's deposition testimony is as follows:

Q Where did you run?

A We were trying to jump that big hole to the other building.

Q So you were going to try and jump over the big hole?

A Yeah.

Q Why didn't you go to the front or the back where the roofs were touching?

A We went to the back, the police was coming, so we were like, "Yeah, he's coming." So the big hole, we jumped that big hole. We were scared.

. . . .

Q So after you saw the police coming did you start running toward the back of the building?

A No, to the middle.

Q You started running toward the middle of the building?

A Yeah.

. . . .

Q Which way did [Samuel] start running after you told him the cops were coming?

A To the big hole.

Q He started running toward the big hole?

A Yeah.

. . . .

Q So you were right behind him. When he got to the big hole what did he do?

A He hit a bump, I don't know, a little bump, and he just fell down.

Q Well, I thought you said he was going to try and jump over the big hole.

A He was going to try, but he felt like a bump, so he fell.

. . . .

Q So what you saw was [Samuel] tried to leap from the roof on the left of this picture to the roof on the right, but when he jumped he got his foot caught right here where you drew the X? [1]

A Uh-huh.

Samuel sustained severe injuries from the fall, including brain damage. As a result of his injuries, he was unable to be deposed.

The thrust of the deposition testimony and written reports of plaintiffs' experts was that there should have been a roof barrier

---

1 Jose testified that the air shaft was visible that night. Manuel said the "hole" was not visible at night but he knew it was there because "[y]ou could see the little bump that went around the hole."

separating the two buildings; the Piedilato building lacked adequate security and failed to comply with pertinent state and federal codes; and a high fence should have been constructed around the air/light shaft.

Piedilato testified at his deposition that he was aware people were gaining access to his roof, and admitted that his tenants had told him that children were playing there. He called the police in response to these complaints and "cut the bottom two rungs off the [fire escape] ladder so it would be more difficult to pull it down."

Wayne Puff denied any knowledge that children had been using his roof, but acknowledged he was concerned about drug activity on the rooftops. To prevent this, he installed locks on the entrance doors and roof hatch. He made monthly inspections of the building, including the roof. As a result of the inspections, he knew that the Piedilato building was not maintained as well as his, and that his roof could be accessed easily from the Piedilato roof. He did not, however, walk across to inspect that roof and therefore had no knowledge of the type of security provided for the Piedilato building.

In granting summary judgment, the motion judge concluded that plaintiffs failed to make a *prima facie* case under the *Restatement*, § 339, the so-called infant–trespasser rule. The judge determined that there were fact questions as to whether Piedilato knew or should have known that children were playing on his rooftop. By contrast, the judge noted that Wayne Puff had denied knowledge, and declined to adopt plaintiffs' theory that the Puffs had a duty to discover whether or not children were trespassing on the rooftop.

However, the judge found that, although the air/light shaft "obvious[ly]" posed a risk of serious bodily injury or death to children, that risk was not "unreasonable." *Restatement, supra,* at § 339(b). According to the judge, the risk of harm posed by a fall from the roof was so obvious that "a 14–year–old child can be expected to appreciate" it. He incorporated comment i of the

*Restatement,* which provides that liability "does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them." *Restatement, supra,* at § 339, comment i. It was the judge's view that, based upon the undisputed facts, it would be "incredible" for Samuel not to have been aware of the air/light shaft.

### I

*Restatement, supra,* § 339 provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Section 339 is an exception to the common–law rule immunizing the possessor of land from liability resulting from injury to the trespasser, absent willful or intentional conduct. *Simmel v. New Jersey Coop. Co.,* 28 *N.J.* 1, 7–8, 143 *A.2d* 521 (1958). This exception is rooted in a "prudent and essential" accommodation of the landowner's right to use his property and society's interest in protecting the life and limb of its youth. *Strang v. South Jersey Broadcasting Co.,* 9 *N.J.* 38, 45, 86 *A.2d* 777 (1952). Since our Supreme Court's decision in *Strang,* the *Restatement's* infant-trespasser rule under § 339 has been firmly entrenched in the law of this State. *See Haase v. North Hudson Scrap Iron Corp.,* 62 *N.J.* 263, 264–65, 300 *A.2d* 561 (1973); *Simmel, supra,* 28 *N.J.* at 9, 143 *A.2d* 521; *Turpan v. Merriman,* 57 *N.J.Super.* 590, 594, 155 *A.2d* 266 (App.Div.1959), *certif. denied,* 31 *N.J.* 549, 158 *A.2d* 450

(1960). *See also DeRobertis ex rel. DeRobertis v. Randazzo,* 94 *N.J.* 144, 157, 462 *A.*2d 1260 (1983).

■ Section 339 is intended to cover "trespassing children of tender years who because of immaturity are wanting in the discretion and judgment essential to their own security." *Strang, supra,* 9 *N.J.* at 45, 86 *A.*2d 777. No inflexible rule can be set forth concerning the "prophylactic measures" which must be taken in a particular case. *Simmel, supra,* 28 *N.J.* at 9, 143 *A.*2d 521. "[T]he measure of duty is care in proportion to the foreseeable risk." *Strang, supra,* 9 *N.J.* at 45, 86 *A.*2d 777. All circumstances of each case are of pivotal significance in applying the rule and in deciding whether a jury question exists in applying the elements under the rule. *See Diglio v. Jersey Central Power & Light Co.,* 39 *N.J.Super.* 140, 145, 120 *A.*2d 650 (App.Div.1956). What is clear, however, is that plaintiffs must establish every element under § 339 in order to prove a *prima facie* case. *Coughlin v. U.S. Tool Co.,* 52 *N.J.Super.* 341, 346, 145 *A.*2d 482 (App.Div.1958), *certif. denied,* 28 *N.J.* 527, 147 *A.*2d 305 (1959).

## II

Applying clause (a) of § 339 to the facts of this case, the question is whether defendants knew or "ha[d] reason to know" that children were trespassing upon their rooftops. The words "reason to know" denotes the fact that "the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." *Restatement, supra,* at § 12(1).

We are convinced that, based on the competent evidential material submitted, a rational fact-finder could resolve this issue in plaintiffs' favor. *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995). Piedilato was aware that children were gaining access to and were playing on the rooftops. Wayne Puff admitted that he was concerned with drug activity on the rooftop, that he was aware that the Piedilato building was not

adequately maintained, and that his roof could be accessed easily from the Piedilato roof. Viewed in a light most favorable to plaintiffs, a jury question existed as to whether a landowner of reasonable intelligence would have "reason to know" that children had access to both rooftops and were trespassing thereon.

However, the pivotal question is whether plaintiffs made out a *prima facie* case under clauses (b) and (c) of § 339; that is, whether the defendants had reason to know that the air/light shaft posed an "unreasonable" risk of death or serious bodily injury to trespassing children; and whether Samuel did not discover the condition or "realize the risk involved in intermeddling with it or in coming within the area made dangerous by it." *Restatement, supra,* at § 339(b) and (c).

In applying clauses (b) and (c) of § 339, there is no hard and fast rule of liability (or no liability) based solely on the age of the child. *Hoff v. Natural Ref. Prods. Co.,* 38 *N.J.Super.* 222, 231, 118 *A.*2d 714 (App.Div.1955) (citing James, *Tort Liability of Occupiers of Land: Duties Owed to Trespassers,* 63 *Yale L.J.* 144, 166–69 (1953)). *See also Restatement, supra,* § 339, comment c ("there is no definite age beyond which the rule here stated does not apply. As the age of the child increases, conditions become fewer for which there can be recovery under this rule, until at some indeterminate point, probably beyond the age of sixteen, there are no longer any such conditions"). Whether there is a jury question concerning application of clauses (b) and (c) usually depends upon the combined and interrelated factors of each case, including: (1) the degree of maturity of the child; and (2) the obviousness of the hazard. *Hoff, supra,* 38 *N.J.Super.* at 228, 118 *A.*2d 714.

Clause (b) requires a showing that the condition "is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an *unreasonable risk* of death or serious bodily harm to such children[.]" *Restatement, supra,* § 339(b) (emphasis added). The comments to § 339 make clear that a condition does not involve an "unreasonable risk" to the

trespassing child if the child, considering his age and the obvious-ness of the danger, can be expected to appreciate it.

> The duty of the possessor, therefore, is only to exercise reasonable care to 1 eep the part of the land upon which he should recognize the likelihood of children's trespassing *free from those conditions which, though observable by adults, are likely not to be observed by children, or which contain the risks ... which are beyond the imperfect realization of children. It does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them.*
>
> [*Restatement, supra*, § 339 comment i (emphasis added).]

Thus, "[t]he question here is not whether [the child] does in fact understand" the risks involved, "although that too has its impor-tance; it is rather *what the possessor may reasonably expect* of [the trespassing child]." *Prosser & Keeton on Torts* § 59 at 407 (5th ed.1984) (emphasis added).

The *Restatement* adds:

> There are many dangers, such as those of fire and water, *or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application,* in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it.
>
> [*Restatement, supra*, at § 339 comment j (emphasis added).]

Stated differently:

> Since the risk of *falling from a height to the ground* or of falling into an excavation, pit, or ditch *is considered obvious even to very young children, a landowner is*, as a general rule, *under no obligation to fence or otherwise guard such places. Thus, there can be no recovery under the special rule for injuries resulting from such a fall.*
>
> [62 *Am.Jur.*2d, *Premises Liability*, § 352 (1990) (footnotes omitted) (emphasis added).]

The exceptions to this "nonliability" rule involve: (a) a concealed dangerous condition; (b) a defective or hazardous condition; (c) a distracting influence; or (d) a present danger that a child of "tender years" could not readily apprehend. *Id.* at § 353.

*Restatement, supra*, § 339(b), must be read in conjunction with clause (c). The focus under clause (c) is not the landowner's foreseeability of an "unreasonable" risk, but whether the trespass-

ing child observes the dangerous potential of the condition and the "full extent" of the risks in "intermeddling with it or in coming within the area made dangerous by it[.]" Therefore, the burden here is on the plaintiffs to prove that because of Samuel's youth, he did not discover the condition or realize the risks involved. "[T]he possessor [of land] is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but [nonetheless] chooses to encounter it out of recklessness or bravado." *Restatement, supra*, § 339 comment m.

However, in order to bar recovery, the child must realize the "full extent" of the risk involved "and must have as full a perception of the risks which are being run as though the child were an adult." 62 *Am.Jur.*2d, *supra*, at § 329. Realization of the "full extent" of the risk involved may be shown by direct evidence, *see Coughlin, supra*, 52 *N.J.Super.* at 348, 145 *A.*2d 482, or by circumstantial evidence, such as the age, intelligence and experience of the injured child, as well as the obviousness of the risk. 62 *Am.Jur.*2d, *supra*, at § 340.

We applied *Restatement, supra*, § 339(c) in *Coughlin*, where a fourteen-year old boy climbed onto a garage and, in darkness, moved from building to building, each time jumping over a parapet and landing on the next roof. 52 *N.J.Super.* at 345, 145 *A.*2d 482. After successfully jumping twice, he leaped a third time and fell to the ground. The boy admitted that "he was aware of the risk and danger involved in traversing the roof top in the dark." *Id.* at 346, 145 *A.*2d 482. In affirming dismissal of plaintiffs' complaint, we concluded that § 339(b) was not satisfied because the roof was simply not "of such character as likely to cause an unreasonable risk of serious bodily harm within the true meaning of the rule." *Id.* at 348, 145 *A.*2d 482. We also determined that "no jury could have found that this 14– to 15–year old 'infant' did not realize the risk," and therefore § 339(c) was not satisfied. *Ibid.* We concluded:

[W]e are strongly of the opinion that to allow recovery under the facts of this case would make every property owner an insurer for infant trespassers contrary to the Supreme Court's admonition in the *Simmel* case, *supra.* To apply here the infant

trespasser doctrine would be to throw off all limitations on landowner's liability. We cannot permit liability to be based upon the maintenance of natural conditions, common or ordinary objects such as walls, fences, gates, simple tools and appliances. The same degree of care cannot be required in the case of an article which is in such common use that people generally keep it about their premises. We draw the line on allowing liability herein.

[*Id.* at 348–49, 145 A.2d 482 (citations omitted).]

We agree with the motion judge that the rooftops and air/light shaft were not "unreasonable" risks under § 339(b). This is so because a reasonable possessor of land would expect that the air/light shaft would be readily observable by a fourteen–year old child, and that such a child would fully understand the risks of falling into it. The danger here was the "falling from a height," a danger not ordinarily covered under the *Restatement* because, as stated, it is a condition which "may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." *Restatement, supra,* § 339, comment j. Photographs submitted to the motion judge and to us depict the large, irregular air/light shaft, fifteen feet in width at the middle, traversing over one-half of the common side separating the two roofs. As stated, Triano, plaintiffs' expert, testified that anyone moving from one roof to the other would clearly observe the air/light shaft. The motion judge, based on the motion papers and discovery presented to him, concluded:

Clearly, an air shaft between two buildings is a condition which is apparent even to children and the risk of falling in the shaft should be fully realized. This is not a trap maintained by the owners of the building; it is merely caused by the way the buildings were constructed. This is no defect. Section 339 exists to protect children from their childish lack of attention of judgment and from things that are beyond the imperfect realization of children.

We agree. We conclude that the evidence presented was so "one–sided that one party must prevail as a matter of law" on the question whether the air/light shaft constituted an "unreasonable risk" of danger. *Brill, supra,* 142 N.J. at 533, 540, 666 A.2d 146.

Based on the same evidential material, we also concur with the motion judge's findings that plaintiffs failed to satisfy § 339(c). In our view, the judge's conclusion that Samuel had to be aware of the air/light shaft and its attendant danger cannot rationally be

disputed. As the judge noted, the shaft was patently "obvious"; Samuel had to "realize the risk involved in intermeddling with it or in coming within the area made dangerous by it." *Restatement, supra,* at § 339(c). This knowledge is inferred from the deposition testimony and Samuel's own conduct prior to his fall. Samuel and his friends had climbed nearly four stories to reach the roofs and were on the rooftop for over three hours before he fell. Also, no rational fact–finder could conclude that Samuel did not observe the air/light shaft when the undisputed testimony was that he and the other boys crossed the roof several times before the fall by walking around the shaft in order to avoid it.

We reject plaintiffs' argument that summary judgment should have been denied because there was some question whether Samuel "tripped" into the air/light shaft, or was attempting to jump over it. Although Manuel testified that Samuel had tripped, he acknowledged on several occasions during his deposition that before the trip, Samuel was running toward the air/light shaft intending to jump over it.

In any event, whether Samuel tripped or jumped is not dispositive. There is no liability if the trespassing child "realize[s] the risk involved in intermeddling with it or *in coming within the area made dangerous by it.*" *Restatement, supra,* at § 339(c) (emphasis added). Samuel was running "within the area" made dangerous by the air/light shaft in order to avoid being apprehended by the police. On these undisputed facts, a jury could not rationally conclude that Samuel did not fully "realize" the risks involved in running "within the area" of this patently obvious danger.

## III

Plaintiffs raise the alternative argument that, although the danger of falling from a height is one which may be expected to be appreciated by a fourteen–year old child, liability may be imposed if there exists a "distracting influence" that "makes it likely that the child will not discover or appreciate [the danger]." In this case, plaintiffs reason, "there obviously was a distracting influence.

A police car had entered the area. Thinking that they were about to be apprehended by the police, the children cut and ran."

■ The *Restatement* observes that, despite the obviousness of dangers such as "falling from a height," liability may be imposed if there are other factors "creating a special risk that the child will not avoid the danger, such as ... a distracting influence which makes it likely that the child will not discover or appreciate it." *Id.* at § 339 comment j. We agree with defendants that the *Restatement* illustrations reveal that the "distracting influences" referred to must inhere in the land itself in order to establish liability. *See id.* at § 339 comment j, illustrations 6 and 7. Landowners have no control over unexpected events such as the arrival of police to investigate the mischief of the trespassers themselves. Also, as landowners, defendants could not reasonably foresee such an event, or that the event would distract the trespassers. The "distracting influence" exception has no applicability here.

## IV

■ Finally, plaintiffs argue that Samuel's own conduct should be considered only in the context of comparative negligence, *N.J.S.A.* 2A:15–5.1, and not in deciding whether defendants owed a duty of care under § 339 of the *Restatement.* We do not agree.

Essentially, plaintiffs would have us dismantle § 339 of the *Restatement* by erasing clause (c) to the extent its application may depend upon the trespassing plaintiff's own conduct. Such an approach ignores the fact that the *Restatement's* infant–trespasser rule is firmly rooted in our jurisdiction and has not been questioned by our Supreme Court since enactment of the Comparative Negligence Act. *N.J.S.A.* 2A:15–5.1 to –5.3. *Cf. Renz v. Penn Central Corp.,* 87 *N.J.* 437, 459–60, 435 *A.2d* 540 (1981) (the Court engrafted upon the railroad immunity act the "new" doctrine of comparative negligence, replacing the "now" extinct common–law rule of contributory negligence).

Under the *Restatement,* Samuel's conduct is relevant under clause (c) in establishing whether he had discovered the danger or realized the "risk involved in intermeddling with it or in coming within the area made dangerous by it." If he had, defendants owed no duty. As stated, the principal reason for the rule distinguishing trespassing children from trespassing adults is the inability of the child to protect himself but, "if the child is fully aware of the condition, understands the risk which it carries, and is quite able to avoid it, he stands in no better position than an adult with similar knowledge and understanding." *Prosser & Keeton on Torts, supra,* § 59 at 408. As *Prosser* emphasizes, the child's knowledge and own conduct "is not merely a matter of contributory negligence or assumption of risk, *but of lack of duty to the child." Id.* at 409 (emphasis added). Absent such a duty, Samuel's conduct vis–a–vis comparative negligence is not even considered by the fact–finder.

Unlike plaintiffs, we do not read *Brett v. Great American Recreation, Inc.,* 144 *N.J.* 479, 677 *A.*2d 705 (1996), as supportive of the proposition that *Restatement, supra,* § 339(c) should be ignored in favor of a comparative negligence analysis. In *Brett,* the Court concluded that the Ski Act, *N.J.S.A.* 5:13–1 to –11, did not apply to a nonpaying tobogganist. *Id.* at 498, 677 *A.*2d 705. However, applying the doctrine of invited error, the Court refused to accept on appeal the defendants' newly–found argument that the Ski Act was inapplicable, after defendants had argued its applicability during trial. *Id.* at 503, 677 *A.*2d 705. The Court therefore concluded that the trial judge correctly interpreted and charged the Ski Act's provisions, and upheld the jury verdict in plaintiffs' favor. *Id.* at 508, 677 *A.*2d 705.

The *Brett* Court found that, even if the Ski Act had not been applied by the trial court, plaintiffs' verdict would have been the same had the common law been charged. *Ibid.* It rejected defendants' argument that since plaintiffs were trespassers, defendants owed no more duty than to refrain from willfully injuring them. *Ibid.* Noting that landowners owe a "higher duty even to

trespassers when their presence is foreseeable, particularly if an artificial condition or 'dangerous instrumentality' on the land poses a danger to them," the Court defined the common law duty owed by defendants based on the specific facts of that case to include, at a minimum, "a duty to remove obvious, man–made hazards as soon as practicable." *Id.* at 509, 677 *A.*2d 705 (citations omitted).

We do not read *Brett* as being a retreat from or abrogation of the infant–trespasser rule under § 339. The case did not even deal with a child trespasser. The Court simply departed from the general rule applicable to adult trespassers because such a rule in the special circumstances of that case would have been unfair and unjust. Simply stated, the duty defined in *Brett* was dictated by the peculiar and unique factors associated with the operation of an illuminated ski slope.

As the Court in *Brett* states, the ultimate question "is whether, 'in light of the actual relationship between the parties under all of the surrounding circumstances,' the imposition of a duty on the landowner is 'fair and just.'" *Ibid.* (quoting *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 438, 625 *A.*2d 1110 (1993)). The structure of § 339 and its sub–parts provides the type of "fairness" analysis discussed in *Brett;* our decisions have, without exception, recognized that it is "fair and just" to impose liability upon a landowner under § 339 for injuries sustained by infant trespassers, provided that the preconditions under the rule are satisfied by plaintiffs. Nothing in *Brett* suggests modification of the *Restatement* analysis.

Affirmed.